John Pervie Morton, the appellant, was convicted of the crime of aggravated stalking and was sentenced to 20 years' imprisonment. At that same trial he was also convicted of burglary in the third degree and of assault in the third degree and was sentenced to 10 years' imprisonment, to be served concurrently with the sentence for stalking and to 12 months' imprisonment, to be served consecutively with his sentence for stalking, respectively. The appellant raises five issues on this direct appeal from those convictions.
 I
The appellant was charged with stalking Deborah McDaniel in 1993. At trial, Sherry Sherrer White was properly allowed to testify as to her relationship with the appellant and as to the appellant's harassing conduct toward her. The appellant's harassing conduct toward Ms. White occurred in 1990. Defense counsel's objection that this testimony was "not probative and too far removed in time," and that it was "[n]ot related to any events here at issue," (R. 390) was properly overruled.[1]
Evidence of the collateral offense concerning Ms. White was admissible to prove the appellant's intent in connection with his actions toward Ms. McDaniel.
 "If the accused is charged with a crime that requires a prerequisite intent, then prior criminal acts are admissible to show that he had the necessary intent when he committed the now-charged crime. This rule is based upon the theory that, because the unintentional doing of an act is abnormal and unusual, the more a person does other acts similar to the act in question, the greater the likelihood that the act in question was not done inadvertently."
C. Gamble, McElroy's Alabama Evidence § 69.01(5) (4th ed. 1991) (footnotes omitted). See also J. Colquitt, Alabama Law ofEvidence 4.4(c) (1990).
In Alabama, the offense of stalking requires a specific intent.
 "A person who intentionally and repeatedly follows or harasses another person and who makes a credible threat, either express or implied, with the intent to place that person in reasonable fear of death or serious bodily harm is guilty of the crime of stalking."
Ala. Code 1975, § 13A-6-90(a). In connection with the crime of stalking, "harasses" means:
 "Engages in an intentional course of conduct directed at a specified person which alarms or annoys that person, or interferes with the freedom of movement of that person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress. Constitutionally protected conduct is not included within the definition of this term."
§ 13A-6-92(c).
Ms. White testified that she began dating the appellant in 1990. She stated that after they had been dating about three months, *Page 45 
their relationship changed and the appellant became "real possessive." R. 390. She testified as to the appellant's violent conduct and the arguments they had had; to the foul names he had called her; to the appellant's theft of her rings; to his violent physical assaults upon her; to the appellant's breaking and entering her residence; to his wrecking her automobile that was parked in her driveway by repeatedly backing his automobile into hers; to the appellant's blowing his automobile horn and "hollering and screaming" in her driveway at 1:00 a.m. (R. 399); to the appellant's following and physically attacking and choking her, assaulting her date, and shattering the windshield of her automobile; and to the appellant's taking her dog. All of this testimony concerned the appellant's conduct in 1990. We find that the appellant's conduct toward Ms. White in 1990 was not too remote in time to his conduct toward Ms. McDaniel in 1993 to be relevant. SeeMcElroy's at § 69.02(6).
 II
The appellant contends that the trial court erred in refusing to allow the admission into evidence of photographs taken by the appellant of Ms. McDaniel while she was naked.
Prior to trial, the State filed a motion in limine seeking to prevent the appellant from mentioning or introducing the photographs. C.R. 8-9. Immediately before trial, the trial judge found that the use of the photographs had no probative value. The trial judge further found that the appellant's attempt to introduce the photographs was "an attempt to further stalk in my courtroom," stating, "[I]t's clear to me that the threatened use of these pictures could actually be a part of the entire offense." R. 14, 19.
In granting the State's motion in limine, the trial judge stated:
 "I certainly will grant the motion in limine at this point in time.
 "If it becomes material and when the time comes, y'all come and present it to me before there's any further reference. There's to be no reference to pictures in the presence of the jury under any set of circumstances. And, in all seriousness, based on what I see here I think that it's highly unlikely that these pictures were taken at the times that your client [the appellant] has apparently told you. And I would have to regard his attempts to use these photographs as a furtherance of the very offense with which he's charged here; namely, to harass her." R. 14-15.
The general rule is that the denial of a motion in limine, without more, does not rise to the level of reversible error. Where the party seeking the exclusion of the evidence suffers an adverse ruling on its motion in limine, that party
 "can preserve the ruling for post-judgment and appellate review only by objecting to the introduction of the proffered evidence and assigning specific grounds at the time of trial, unless he or she obtains the express acquiescence of the trial judge that a subsequent objection and assignment of grounds are not necessary."
Parks v. State, 587 So.2d 1012, 1015 (Ala. 1991) (emphasis in original). See also Ex parte Phillips, 527 So.2d 154, 156 (Ala. 1988). Similarly, where the party seeking to introduce the evidence suffers an adverse ruling on the opposing party's motion in limine, the adverse ruling alone, "unless . . . [it] is absolute or unconditional, . . . does not preserve the issue for appeal." Perry v. Brakefield, 534 So.2d 602, 606 (Ala. 1988).
In this case, the trial court's ruling on the State's motion in limine was clearly conditional. In granting the motion, the court expressed its willingness to revisit the issue of the materiality of the photographs during the course of the trial. However, the appellant did not make any attempt to take advantage of that offer, nor did he seek to introduce the photographs at any time during the trial.
Additionally, we note that during defense counsel's cross-examination of Ms. McDaniel, testimony was elicited and references were made, without objection by the State, to the photographs. Ms. McDaniel testified that in August or September 1991, she took photographs of the appellant in the nude "out at the farm" and that the appellant took photographs of her in the nude. R. 205. She also *Page 46 
stated that the appellant had taken some "nude photographs" of her "not long after the relationship started," but she stated that she "had gotten those and torn them up." R. 205. Ms. McDaniel acknowledged that in a telephone conversation with the appellant that she had tape recorded, she had stated that "people would probably enjoy seeing them." R. 207.
 III
At trial, the State proved that, by contacting Ms. McDaniel, the appellant violated an order of the district court restricting the appellant's contact with Ms. McDaniel. The appellant argues that the trial court incorrectly ruled that the order of the district court was a valid order under the stalking statute, thereby improperly permitting a conviction for aggravated stalking. He contends that the district court had no authority to enter a "restraining order" or an injunction and, therefore, that its order was void and would not support a conviction for aggravated stalking.
The appellant was arrested on May 7, 1993, apparently for his harassment of Ms. McDaniel prior to that date. The District Court of Chambers County issued the following order when it released the appellant on bond:
"Conditions of bond on John [Pervie] Morton:
 "1. Mr. Morton is to have no contact (by phone, by letter, in person, or indirectly through other persons) with Debbie McDaniel or her son, during the pendency of this matter. (Does not exclude a real investigator investigating the pending charge).
 "2. This should be considered by Mr. Morton as a restraining order against him by the court. Violation of this order can and will result in a revocation of this bond and may lead to further criminal prosecution for these actions.
". . . .
 "Done this 7th day of May, 1993." C.R. 27, 116, 118.
This order was signed by the appellant, the appellant's attorney, and the district court judge. Because the appellant contended at trial that the district court had no jurisdiction to enter a "restraining order," the trial court directed that paragraph number 2 be reacted so that it would not be seen by the jury.
A person who "stalks" another and "in doing so also violatesany court order or injunction is guilty of the crime of aggravated stalking." § 13A-6-91(a) (emphasis added).
Count 2 of the indictment charged the appellant with aggravated stalking, in that he
 "did, on or about August 3, 1993, intentionally and repeatedly follow or harass another person, to-wit: Deborah McDaniel, and the said [appellant] did make a credible threat, either expressed or implied, with the intent to place Deborah McDaniel in reasonable fear of death or serious bodily harm, and whose conduct in doing so violated a court order, to-wit: conditions of release on bond issued by Chambers County District Court Judge Joel Holley, in violation of § 13A-6-91. . . ." C.R. 1.
The trial judge ruled that under Rule 7.3, A.R.Crim.P., the district court had the authority to issue its order imposing conditions on the appellant's release:
 "But 7.3 makes it clear that those conditions are embodied in an order. And what I'm looking at here is a piece of paper that's got Judge Holley's signature at the bottom. It's a clear effort on Judge Holley's part to impose additional conditions on the release. The reference to it being a preliminary injunction or restraining order is mere surplusage with no legal effect. The substance of the order was that he's to stay away from her, and that message was effectively conveyed. And not even out in the penumbra is it necessary that it be construed as an injunction but merely as the clearly authorized exercise of the judge's power to impose conditions of release under Rule 7.3(b) of the Alabama Rules of Criminal Procedure." R. 27-28.
We agree with the reasoning of the trial court.
Rule 7.3(b), A.R.Crim.P., states: *Page 47 
 "(b) Additional Conditions. An order of release may include any one or more of the following conditions reasonably necessary to secure a defendant's appearance:
". . . .
 "(4) Restrictions on the defendant's travel, association, or place of abode during the period of release;
". . . .
 "(6) Any other conditions which the court deems reasonably necessary."
Clearly, a district court has the jurisdiction to admit a defendant to bond after arrest. See Ala. Code 1975, §§15-4-9(b); 15-6-22; 15-9-42, -43, -44; 15-11-3, -4; and15-13-107(a), (b). Under Rule 7.3, A.R.Crim.P., the district court had the authority to establish the conditions of the appellant's release. Therefore, even if the district court does not have the authority to issue a "restraining order" or an "injunction," an issue we need not, and do not, decide, a district court clearly has the jurisdiction to prevent a defendant from associating with or contacting another person as a condition of pretrial release on bond pursuant to Rule 7.3(b). We find that the order of the district court was not void.
 IV
The appellant was charged with a burglary occurring at Ms. McDaniel's residence on August 3, 1993. He claims that the trial court erred in admitting evidence that Ms. McDaniel's residence was burglarized on February 7, 1993, and some jewelry stolen. The appellant alleges that the admission of this evidence violated the rule against the admission into evidence of distinct and independent offenses not charged in the indictment.
While there was no direct evidence that the appellant committed the February 7 burglary of Ms. McDaniel's residence, there was evidence that he had burglarized Ms. White's residence and had taken some jewelry. The circumstances surrounding the commission of both burglaries were substantially similar. The evidence of the February McDaniel burglary and the White burglary was properly admitted to demonstrate the appellant's pattern in harassing and tormenting the two women.
Furthermore, after the brief testimony concerning the February McDaniel burglary was elicited, the trial judge instructed the jury as follows:
 "Ladies and gentlemen, in the course of a trial certain things have to be said first and certain things have to be said later.
 "Now, at this point in time, there is nothing that connects the defendant with the episode that's just been related. If there's not anything later on that ties that into the defendant or ties the defendant into that event, then that certainly would not have any probative value whatsoever, and you should disregard it.
 "So you listen very carefully later on to see whether you come up with any judgment that's based on the evidence that the defendant had anything to do with the event that's just been related." R. 93-94.
We find no reversible error in the trial court's admission of the evidence of the February 7, 1993, burglary of Ms. McDaniel's residence.
 V
The appellant alleges that there was a fatal variance between the pleading and the proof. The appellant contends that although the indictment charged that he "did, on or about August 3, 1993, intentionally and repeatedly follow or harass" Ms. McDaniel, the evidence was that "[a]ll of the actual and alleged phone calls, threats, entries into her house, etc. were all prior to August 3, 1993." Appellant's brief at 29. The appellant argues that all of the elements of the aggravated stalking must have occurred on the specific date alleged in the indictment.
The harassment envisioned by the stalking statute involves a "course of conduct," which is defined as "[a] pattern of conduct composed of a series of acts over a period of time which evidences a continuity of purpose." § 13A-6-92(a). The trial court found that "the allegation that occurred on that day, it was completed on that day. And I think that's close enough to prevent it being a fatal variance between pleadings and proof." R. 666-67. *Page 48 
Rule 13.2(d), A.R.Crim.P., states in pertinent part: "It is not necessary to state the precise time or date at which or on which the offense is alleged to have been committed, or the place where the offense is alleged to have been committed unless the time or place is a material element of the offense."
If the indictment includes an allegation that the crime charged occurred at a specific time, proof at trial that the crime occurred at a different time is not fatal, so long as the variance does not affect the substantial rights of the defendant. Smith v. State, 551 So.2d 1161, 1168 (Ala.Cr.App. 1989). In Smith, this Court overruled the holding in Thorntonv. State, 480 So.2d 34, 36 (Ala.Cr.App. 1985), that "if the state elects to prosecute a crime occurring at a particular time, then the State is entitled to a conviction only upon establishing that fact by evidence."
 "When the government charges that an offense occurred 'on or about' a certain date, the defendant is on notice that the charge is not limited to the specific date or dates set out in the indictment. United States v. Creamer, 721 F.2d 342 (11th Cir. 1983). Proof of a date reasonably near the specified date is sufficient. United States v. Champion, 813 F.2d 1154 (11th Cir. 1987); United States v. Grapp, 653 F.2d 189, 195 (5th Cir.Unit A, 1981). Ordinarily, a variance between the date alleged and the date proved will not trigger reversal as long as the date proved falls within the statute of limitations and before the return of the indictment. United States v. Harrell, 737 F.2d 971, 981 (11th Cir. 1984), cert. denied, 469 U.S. 1164, 105 S.Ct. 923, 83 L.Ed.2d 935 (1985)."
United States v. Reed, 887 F.2d 1398, 1403 (11th Cir. 1989), cert. denied, 493 U.S. 1080, 110 S.Ct. 1136, 107 L.Ed.2d 1041
(1990).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] After the trial court overruled the appellant's objection, the trial judge, on his own, gave the jury the following limiting instructions:
 "Ladies and gentlemen, let me give you this limiting instruction concerning this particular witness' testimony.
 "This particular witness is testifying and will be testifying to matters concerning her alleged relationship with the defendant. Obviously, those have no direct meaning as far as showing what happened in the present case. The testimony is being admitted solely for the purpose of showing motive or modus operandi; that is, a common pattern or scheme in connection with the relationship with this person, which is admitted solely for the purpose of showing intent in the present case.
 "The fact that matters may have occurred in connection with this person does not certainly in and of itself establish that those same things happened with the alleged victim in the present case. In all matters of fact, it will be up to you to determine the value and the weight to give to the testimony of the various witnesses.
 "What is offered at the present time is not offered to show that the events complained of in the present case actually occurred, and it would offer no proof of that. It would not amount to any proof of the fact that those events occurred. It is offered for the limited and sole purpose of showing motive or intent." R. 390-92.
There was no objection to this instruction.