The appellant, Kenneth H. Culbreath, was convicted of the crime of stalking his former wife, a violation of § 13A-6-90, Code of Alabama 1975. He was sentenced seven years in the penitentiary.
 I
The appellant initially contends that Alabama's stalking statute is unconstitutional because, he says, it is vague and overbroad. *Page 158 
Section 13A-6-90, defines the crime of stalking as follows:
 "A person who intentionally and repeatedly follows or harasses another person and who makes a credible threat, either express or implied, with the intent to place that person in reasonable fear of death or serious bodily harm is guilty of the crime of stalking."
"Harasses" as that term is used in the above statute is defined in § 13A-6-92(c) as follows:
 "Engages in an intentional course of conduct directed at a specified person which alarms or annoys that person, or interferes with the freedom of movement of that person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress. Constitutionally protected conduct is not included within the definition of this term."
"Credible threat" as the phrase is used in the above statute is defined in § 13A-6-92(b) as follows:
 "A threat, expressed or implied, made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to fear for his or her safety or the safety of a family member and to cause reasonable mental anxiety, anguish, or fear."
"Course of conduct" is defined in § 13A-6-92(a) as follows:
 "A pattern of conduct composed of a series of acts over a period of time which evidence a continuity of purpose."
The United States Supreme Court has stated the following about the void for vagueness challenge:
 "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to ' "steer far wider of the unlawful zone" . . . than if the boundaries of the forbidden areas where clearly marked.' "
Grayned v. City of Rockford, 408 U.S. 104, 108-09,92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972), quoting, in part, Baggettv. Bullitt, 377 U.S. 360, 372, 84 S.Ct. 1316, 1323,12 L.Ed.2d 377 (1964). See also United States v. Harriss, 347 U.S. 612,617-18, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). To withstand a challenge of vagueness, a statute must: 1) give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and, 2) provide explicit standards to those who apply the laws. Grayned.
 "[T]his prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for '[i]n most English words and phrases there lurk uncertainties.' Robinson v. United States, 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945). Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid."
Rose v. Locke, 423 U.S. 48, 49-50, 96 S.Ct. 243, 244,46 L.Ed.2d 185 (1975). "A defendant who challenges a statute on the ground of vagueness 'must demonstrate that the statute under attack is vague as applied to his own conduct, regardless of the potentially *Page 159 
vague applications to others.' " Senf v. State, 622 So.2d 435,437 (Ala.Cr.App. 1993), quoting Aiello v. City of Wilmington,623 F.2d 845, 850 (3d Cir. 1980). (Emphasis supplied.)
This court has stated the following about the overbreadth doctrine:
 "The overbroad doctrine derives from the First Amendment, see Young v. American Mini Theaters [Theatres], 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), and serves to invalidate legislation so sweeping that, along with its allowable proscriptions, it also restricts constitutionally-protected rights of free speech, press, or assembly, see, e.g., Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971)."
McCrary v. State, 429 So.2d 1121, 1123 (Ala.Cr.App. 1982), cert. denied, 464 U.S. 913, 104 S.Ct. 273, 78 L.Ed.2d 254
(1983).
Alabama appellate courts have never had occasion to address the issue of whether Alabama's stalking statute, § 13A-6-90, is unconstitutionally vague or overbroad. Forty-eight states have enacted stalking laws. "Forty-eight states and the District of Columbia now have laws that make it a crime to stalk another person — that is, to follow and harass that person." Boychuk, M. Katerine, Are Stalking Laws Unconstitutionally Vague orOverbroad?, 88 Nw.U.L.Rev. 769 (1994).
Several states have addressed this issue and found their stalking statutes to be neither vague nor overbroad. SeePallas v. State, 636 So.2d 1358 (Fla.Dist.App. 1994), review granted, 648 So.2d 723 (Fla. 1994)[1]; People v.Heilman, 25 Cal.App.4th 391, 30 Cal.Rptr.2d 422 (1994);Johnson v. State, 264 Ga. 590, 449 S.E.2d 94
(1994); Woolfolk v. Commonwealth, 18 Va. App. 840,447 S.E.2d 530 (1994); State v. Bilder,99 Ohio App.3d 653, 651 N.E.2d 502 (1994);State v. Culmo, 43 Conn. Sup. 46, 642 A.2d 90
(Conn.Super. 1993).
The Alabama stalking statute is substantially similar to both the Florida and California statutes. The Alabama stalking statute, like the Florida and California statutes, has three components. First, the accused must intentionally commit the offense. Second, there must be a "credible threat." Third, there must be an "act" of repeatedly following or harassing another person that places that person in reasonable fear of death or serious bodily harm.
Alabama's statute provides that the offense must be intentional. "A specific intent requirement can ameliorate vagueness problems. If an actor has a specific intent to bring about a particular effect, he can be presumed to be on notice that his actions to effect that intent constitute a crime." 88 Nw.U.L.Rev. at 781.
The Florida District Court of Appeals in upholding the Florida aggravated stalking statute, § 784.048(3), Fla.Stat. (Supp. 1992),[2] against challenges of vagueness in Pallas, stated the following about the statute's intent requirement:
 "We have no difficulty in concluding that the statute gives fair notice of the proscribed activity, and is not void for vagueness. Defendant contends that in the statutory phrase, 'willfully, maliciously, and repeatedly follows or harasses another person,' § 784.048(3), Fla.Stat. (Supp. 1992), 'willfully, maliciously, and repeatedly' only modifies the word 'follows' and does not modify the word 'harass.' From this faulty premise defendant argues that the statute is therefore vague as regards the term 'harasses'; we agree with the *Page 160 
trial court that 'willfully, maliciously, and repeatedly' does in fact modify the word 'harasses.' The language of subsection 784.048(3), in conjunction with the definitions, is reasonably clear and specific."
Pallas, 636 So.2d at 1360. Alabama's stalking statute likewise is not vague in this regard.
Second, there must be a credible threat, which is defined in § 13A-6-92(b) as "[a] threat, expressed or implied, made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to fear for his or her safety or the safety of a family member and to cause reasonable mental anxiety, anguish, or fear."
 "Because it helps to remove innocent and constitutionally protected activity from the scope of the statute, a threat requirement might salvage an otherwise vague or overbroad law. Because a person who threatens another with death or great bodily injury knows that such speech constitutes a crime, vagueness problems are mitigated."
88 Nw.U.L.Rev. at 779. Alabama's stalking law clearly defines a "credible threat" and provides that the threat must be communicated. There is no vagueness or overbreadth problem here.
Third, Alabama's stalking law requires "acts," i.e., repeatedly following or harassing another person. The phrase "repeatedly follows" was evaluated by the Superior Court of Connecticut in Culmo, supra, when the court was reviewing the constitutionality of Connecticut's stalking law.[3] The court stated:
 "A willful and repeated 'following' or 'lying in wait' is required to constitute a violation of the statute. Webster's Ninth New Collegiate Dictionary defines 'follows' to mean 'to go, proceed, or come after' and 'pursue in an effort to overtake.' As used in [the stalking statute], which requires that any 'following' be 'willful' and 'repeated,' the 'following' must have a predatory thrust to it. The statute does not encompass 'following' that is aimless, unintentional, accidental or undertaken for a lawful purpose. Of course, 'following' implies proximity in space as well as time. Whether someone has deliberately maintained sufficient visual or physical proximity with another person, uninterrupted, over a substantial enough period of time to constitute 'following' will depend upon a variety of differing factors in each case. These are appropriate issues for the trier of fact to decide, not this court."
642 A.2d at 98-99. The Florida District Court of Appeals also stated the following about the term "follows": " 'Follows' is directed primarily at conduct, not First Amendment expression. This portion does not suffer from real and substantial overbreadth judged in relation to the state's plainly legitimate sweep." Pallas, 636 So.2d at 1364.
Regarding the term "harasses," the Florida Court inPallas stated the following:
 "Defendant also argues that the statutory definition of 'harasses,' id. § 784.048(1)(a), is vague. Under the statute, ' "Harasses" means to engage in a course of conduct directed at a specific person that causes substantial emotional distress in such person and serves no legitimate purpose.' Id. Defendant reads the statute to create an entirely subjective standard for 'substantial emotional distress.' Thus, reasons defendant, if the victim is an unusually sensitive person the victim may suffer 'substantial emotional distress' from entirely innocent social contact. Defendant contends that the statute creates a standard which is too vague and uncertain to be enforced.
 "In our view the statute creates no such subjective standard, but in fact creates a 'reasonable person' standard. The stalking statute bears a family resemblance to the assault statutes. See § 784.011(1), Fla.Stat. (1993) ('An "assault" is an intentional, unlawful threat by word or act to do violence to the person of another, coupled *Page 161 
with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent.'); id. § 784.021 (aggravated assault). Under the assault statutes, it is settled that a 'well-founded fear' is measured by a reasonable person standard, not a subjective standard. Indeed, 'where the circumstances were such as to ordinarily induce fear in the mind of a reasonable man, then the victim may be found to be in fear, and actual fear need not be strictly and precisely shown.' Gilbert v. State, 347 So.2d 1087, 1088 (Fla. 3d DCA 1977) (citations omitted); McClain v. State, 383 So.2d 1146, 1147 (Fla. 4th DCA), review denied, 392 So.2d 1376 (Fla. 1980). The same principle applies to the definition of 'harassment' under the stalking statute; the legislature has proscribed willful, malicious, and repeated acts of harassment which are directed at a specific person, which serve no legitimate purpose, and which would cause substantial emotional distress in a reasonable person. See generally State v. Elder, 382 So.2d [687] 689 [(Fla. 1980)] upholding constitutionality of statute forbidding 'the making of an anonymous telephone call with the intent to annoy, abuse, threaten, or harass the recipient of the call. . . .').
 "We concur with the trial court that the statute is not vague and gives fair notice of the conduct which is proscribed."
Pallas, 636 So.2d at 1360-61.
The Florida court in Pallas further stated the following about the contention that § 748.048(3) was overbroad:
 "Defendant argues that the overbreadth doctrine is applicable here because the statute is capable of being applied to speech. Indeed, speech was involved in the series of harassing telephone calls made by defendant. Defendant contends that the statute could be applied to entirely innocent conduct. He suggests that if an overzealous suitor repeatedly telephoned an unusually sensitive individual in hopes of establishing a romantic relationship, the suitor could be charged under this statute. Defendant also suggests that the statute could be applied against a person who played practical jokes, or someone who uses a figure of speech such as "You'll get yours!"
 "In setting forth these examples, the defendant relies on the erroneous interpretation of that statute discussed earlier in this opinion. The conduct of the defendant must be willful, malicious, and repeated. § 784.048(3), Fla.Stat. (Supp. 1992). There must be a course of conduct which would cause substantial emotional distress to a reasonable person in the position of the victim. Id. § 784.048(1)(a). The conduct must serve no legitimate purpose. Id. Furthermore, the statute also provides, 'Constitutionally protected activity is not included within the meaning of "course of conduct." ' Id. § 784.048(1)(b). Finally, for aggravated stalking under subsection 784.048(3), there must also be a credible threat made with the intent to place the victim in reasonable fear of death or bodily injury. Id. § 784.048(1)(c), (3)."
Pallas, 636 So.2d at 1363. See Salatino v. State,644 So.2d 1035 (Fla.App. 1994); Gilbert v. State, 639 So.2d 191 (Fla. Dist. Ct. App.), review granted, 648 So.2d 722 (Fla. 1994);Varney v. State, 638 So.2d 1063 (Fla.Dist.Ct.App. 1994), review granted, 649 So.2d 235 (Fla.). See also Heilman, supra.
The California stalking law, Penal Code § 646.9(a),[4] was evaluated in a law review article, which states, in part:
 "The California law would likely withstand both prongs of a vagueness challenge. First, by including an intent requirement, the law avoids the danger that a person may be prosecuted under it even though she did not know that her conduct was prohibited. California's intent requirement is the soundest type — requiring intent to put another person in fear of death or great bodily harm. Because it requires the same intent as is specified in *Page 162 
assault laws, it is undoubtedly constitutionally sound. Second, the California law avoids the problem of arbitrary and discriminatory enforcement. The law requires that a threat be communicated; this means that a police officer cannot make an arrest based on his own subjective determination of what annoying, alarming, or harassing conduct is. Furthermore, the law's requirement that the harassing conduct be such as would cause a reasonable person severe emotional distress properly measures harassment against an objective standard."
88 Nw.U.L.Rev. at 800.
Based on this court's research and the evaluation of statutes and case law from other jurisdictions, we hold that § 13A-6-90
is neither vague nor overbroad. Our research reveals that Alabama's stalking law is one of the strongest stalking laws in the country. See in depth discussion in Boychuk, M. Katerine,Are Stalking Laws Unconstitutionally Vague or Overbroad?, 88 Nw.U.L.Rev. 769 (1994).
 II
The appellant further contends that there was no predicate established for the receipt into evidence of caller identification (caller ID) information. W.M., the appellant's former wife, testified that after she received several harassing telephone calls she activated the caller ID function on her telephone, which displayed the telephone number of the caller who had made the most recent telephone call to her residence. Specifically, the appellant contends that W.M. was not an expert on the use of caller ID, that caller ID is a new scientific device which must meet the Frye v. United States,293 F. 1013 (D.C. Cir. 1923), test for admissibility, and that the evidence was hearsay.
Alabama has never has occasion to rule on the admissibility of caller ID information. However, this issue was recently addressed by the Virginia Court of Appeals in Tatum v.Commonwealth, 17 Va. App. 585, 440 S.E.2d 133 (1994). The court stated:
 "This is an issue of first impression in Virginia. Appellant argues that Mr. Orsini's testimony regarding what was displayed on his caller ID device constituted inadmissible hearsay. We disagree. 'Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.' Stevenson v. Commonwealth, 218 Va. 462, 465, 237 S.E.2d 779, 781 (1977) (quoting McCormick on Evidence § 246, at 584 (2d ed. 1972)). In this case, there is no 'out-of-court asserter,' because the caller ID display is based on computer generated information and not simply the repetition of prior recorded human input or observation.
". . . .
 "Finding no error in the trial court's overruling of appellant's hearsay objection, we now address the issue of the reliability of the caller ID device. In Penny [v. Commonwealth, 6 Va. App. 494, 370 S.E.2d 314 (1988)], we held 'that the call trap results may be admitted only after the particular device in question has been proved reliable.' Id. at 499, 370 S.E.2d at 317. We noted, however, that because the call trap is specifically 'employed for the purposes of litigation and during the competitive process of ferreting out criminal agents, the added check [of reliability] is needed.' Id. at 500 n. 3, 370 S.E.2d at 317 n. 3."
Tatum, 440 S.E.2d at 135-36.
We agree with the reasoning of the Virginia Court of Appeals and hold that the only predicate necessary for the admission into evidence of caller ID evidence is that the caller ID device be proven reliable. This was established in the present case. The victim testified that when she received harassing telephone calls she would activate her caller ID. She testified that in each instance the number displayed on the device was the appellant's home telephone number. Caller ID evidence was correctly received in this case. *Page 163 
 III
The appellant further contends that the court committed reversible error by receiving into evidence allegedly inadmissible hearsay (complaints that the victim had filed against the appellant). We agree with the state's contention that no error occurred here and we agree for the same reasons given by the trial court. The following occurred when the trial court ruled on the objection to the evidence:
 "Mr. Nicholas [defense counsel]: Judge, we object on the grounds they contain inadmissible hearsay. I think they have little, if any, probative value.
 "The Court: I'm going to overrule the objection but I'm going to admit them with a limiting instruction. Ladies and gentlemen of the jury, exhibits 2 through 8 are admitted for the purpose and only for the purpose to show that [W.M.] made a complaint with the sheriff's office against Mr. Culbreath. You have heard her testify as to what each of those complaints were so they're only admitted for the purpose of showing you that a complaint was made, not for the substance of what is in the complaint, as she has testified to and you will judge her testimony and not what is written as to the substance of the complaint."
From the above dialogue it is clear that the appellant can show no reversible error here because the court gave a limiting instruction to the jury.
 IV
The appellant further contends that there was not sufficient evidence to find him guilty of stalking because, he says, there was no evidence of a "credible threat with the apparent ability to cause death or serious physical injury."
The appellant's contention goes to the weight of the evidence and not the sufficiency of the evidence. Curry v. State,601 So.2d 157 (Ala.Cr.App. 1992). Within reasonable bounds, any question of the "credibility" of the threat made to the victim was a question for the jury to resolve.
The state's evidence tended to show that the appellant engaged in a harassing course of conduct against the victim. W.M. testified that the appellant repeatedly drove by her house, repeatedly followed her in his car, and repeatedly telephoned her at home. She testified that she found his conduct threatening and that she feared for her safety. W.M. testified as to several instances in which the appellant threatened her. In one instance she saw the appellant tampering with the gas tank in her automobile. On another occasion, the appellant threatened to kill her when they were both at her children's school. She testified that on still another occasion the appellant telephoned her and told her that she was a "dead bitch." The appellant's actions in most of these instances were corroborated by the testimony of neighbors and friends. There was sufficient evidence to present the case to the jury for its determination.
 V
The appellant further contends that the court erred in allowing into evidence threats made to a third party not named in the indictment. Evidence of these threats was correctly received for the purpose of evidencing the appellant's intent to stalk his former wife.
This question was addressed in the only previous appeal from a conviction under the stalking law in Alabama, Morton v.State, 651 So.2d 42 (Ala.Cr.App. 1994). In Morton, this court stated:
 "Evidence of the collateral offense concerning [a third party] was admissible to prove the appellant's intent in connection with his actions toward [the victim].
 " 'If the accused is charged with a crime that requires a prerequisite intent, then prior criminal acts are admissible to show that he had the necessary intent when he committed the now-charged crime. This rule is based upon the theory that, because the unintentional doing of an act is abnormal and unusual, the more a person does other acts similar to the act in question, the greater the likelihood that the act in question was not done inadvertently.' *Page 164 
 "C. Gamble, McElroy's Alabama Evidence § 69.01(5) (4th ed. 1991) (footnotes omitted). See also J. Colquitt, Alabama Law of Evidence 4.4(c) (1990).
 "In Alabama, the offense of stalking requires a specific intent."
Morton, 651 So.2d at 44.
Other jurisdictions have reached the same conclusion. As the Superior Court of Pennsylvania stated in Commonwealth v.Urrutia, 439 Pa. Super. 227, 653 A.2d 706 (1995):
 "In the instant case, prior bad acts were properly admitted to establish [the defendant's] intent to stalk his victim. The testimony permitted the inference that [the defendant] intended to cause [the victim] to fear for her physical safety or intended to cause her emotional distress."
653 A.2d at 709.
 VI
Last, the appellant contends that the court erred in allowing a prior conviction for harassing the same person he was charged with stalking to be received into evidence. He contends that this violated his constitutional protection against double jeopardy.
This evidence was correctly received at trial. To be found guilty of stalking, a defendant must engage in a course of conduct by "repeatedly follow[ing] or harass[ing]" an individual. As the Pennsylvania Superior Court stated inUrrutia:
 "The bad acts were also admissible to show a 'course of conduct,' an element of the crime. In this case the prior bad acts establish the course of conduct. In Commonwealth v. Evans, the court examined the admissibility of prior bad acts to prove the existence of a course of conduct for harassment. 299 Pa. Super. 529, 445 A.2d 1255
(1982). The court noted that proof of a course of conduct 'undermines the appellant's contention that the reviewing court is precluded from examining the testimony elicited regarding matters that occurred prior to . . . the date of the complained of conduct.' See also Commonwealth v. Schnabel, 236 Pa.Super, 280, 284, 344 A.2d 896, 898 (1975) (evidence of single act of misconduct insufficient to establish 'course of conduct' element of harassment); Commonwealth v. Showalter, 231 Pa. Super. 278, 283, 332 A.2d 456, 458 (1974) (evidence of prior violence against prosecutrix admissible as demonstrating overall scheme of harassment).
 "Course of conduct by its very nature requires a showing of a repetitive pattern of behavior. Therefore, where evidence of prior bad acts is necessary to establish the pattern, the evidence is admissible."
653 A.2d at 709.
The appellant's prior conviction for harassing his former wife was correctly received into evidence to show the appellant's "course of conduct" in stalking his former wife.
For the foregoing reasons, the judgment in this cause is due to be affirmed.
AFFIRMED.
All the Judges concur.
[1] A Florida District Court of Appeals found the "aggravated" stalking statute constitutional in Pallas. However, another Florida court struck down Florida's "simple" stalking statute in State v. Kahles, 644 So.2d 512 (Fla.Dist.Ct.App. 1993), review granted, 652 So.2d 817 (Fla. 1995). Florida's aggravated stalking statute is substantially similar to the Alabama statute at issue in the present case. The Florida simple stalking statute that was found to be unconstitutionally vague in Kahles provided no intent requirement or credible threat requirement.
[2] The Florida statute provides, in pertinent part: "Any person who willfully, maliciously, and repeatedly follows or harasses another person, and makes a credible threat with the intent to place that person in reasonable fear of death or bodily injury, commits the offense of aggravated stalking, a felony in the third degree. . . . ."
[3] Connecticut's stalking law at issue in Culmo is contained in General Statutes § 53a-181d which states: "A person is guilty of stalking in the second degree when, with intent to cause another person to fear for his physical safety, he willfully and repeatedly follows or lies in wait for such other person and causes such other person to reasonably fear for his physical safety."
[4] The California stalking law provides, in pertinent part: "Any person who willfully, maliciously, and repeatedly follows or harasses another person and who makes a credible threat with the intent to place that person in reasonable fear of death or great bodily injury is guilty of the crime of stalking."