The State appeals the trial court's order dismissing the indictment against Robert Dale Randall that had charged him with the crime of stalking, a violation of § 13A-6-90, Code ofAlabama 1975, and with aggravated stalking, a violation of §13A-6-91, Code of Alabama, 1975.
 I
The State argues that the judgment of the trial court holding Alabama's stalking law, § 13A-6-90 et seq., Code of Alabama
1975, to be unconstitutionally vague and overbroad is due to be reversed based on the authority of Culbreath v. State,667 So.2d 156 (Ala.Cr.App. 1995).
At the hearing on his motion to dismiss, Randall argued that the stalking law is vague because the statute, he says, fails to define certain words used in the statute, specifically, the words "repeatedly" and "series." Additionally, he argues that the statute is vague because it provides no "time limitation" for acts constituting stalking.
The crime of stalking is defined in § 13A-6-90 as follows:
 "A person who intentionally and repeatedly follows or harasses another person and who makes a credible threat, either expressed or implied, with the intent to place that person in reasonable fear of death or serious bodily harm, is guilty of the crime of stalking."
(Emphasis added.)
The crime of aggravated stalking is defined in § 13-6-91 as follows:
 "A person who violates the provisions of Section 13A-6-90(a) and whose conduct in doing so also violates any court order or injunction is guilty of the crime of aggravated stalking."
"Harasses" as that term is used in the stalking statute is defined in § 13A-6-92(c) as follows:
 "Engages in an intentional course of conduct
directed at a specified person which alarms or annoys that person, or interferes with the freedom of movement of that person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress. Constitutionally protected conduct is not included within the definition of this term."
(Emphasis added.)
"Course of conduct" is defined in § 13A-6-92(a) as follows:
 "A pattern of conduct composed of a series of acts
over a period of time which evidences a continuity of purpose."
(Emphasis added.)
In Culbreath v. State, supra, this court addressed the issue whether the stalking law is unconstitutionally vague and overbroad. In holding the statute to be neither vague nor overbroad, this court stated:
 "To withstand a challenge of vagueness, a statute must: 1) give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and, 2) provide explicit standards to those who apply the laws. Grayned [v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972)].
 " '[T]his prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for "[i]n most English words and phrases there lurk uncertainties." Robinson v. United States, 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944
(1945). Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.'
 "Rose v. Locke, 423 U.S. 48, 49-50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975). 'A defendant who challenges a statute on the ground of vagueness "must demonstrate that the statute under attack is vague as applied to his own conduct, regardless of the potentially vague applications to others." ' Senf v. State, 622 So.2d 435, 437 (Ala.Cr.App. 1993), quoting Aiello v. City of *Page 226 
Wilmington, 623 F.2d 845, 850 (3rd Cir. 1980). (Emphasis supplied [in Culbreath])
". . . .
 "The Alabama stalking statute is substantially similar to both the Florida and California statutes. The Alabama stalking statute, like the Florida and California statutes, has three components. First, the accused must intentionally commit the offense. Second, there must be a 'credible threat.' Third, there must be an 'act' of repeatedly following or harassing another person that places that person in reasonable fear of death or serious bodily harm.
 "Alabama's statute provides that the offense must be intentional. 'A specific intent requirement can ameliorate vagueness problems. If an actor has a specific intent to bring about a particular effect, he can be presumed to be on notice that his actions to effect that intent constitute a crime.' [Katerene M. Boycheck, Are Stalking Laws Unconstitutionally Vague or Overbroad?] 88 Nw.U. L. Rev. [769] at 781 [(1994)].
". . . .
 "Second, there must be a credible threat, which is defined in § 13A-6-92(b) as '[a] threat, expressed or implied, made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to fear for his or her safety or the safety of a family member and to cause reasonable mental anxiety, anguish, or fear.'
 " 'Because it helps to remove innocent and constitutionally protected activity from the scope of the statute, a threat requirement might salvage an otherwise vague or overbroad law. Because a person who threatens another with death or great bodily injury knows that such speech constitutes a crime, vagueness problems are mitigated.'
 "88 Nw.U. L. Rev. at 779. Alabama's stalking law clearly defines a 'credible threat' and provides that the threat must be communicated. There is no vagueness or overbreadth problem here.
 "Third, Alabama's stalking law requires 'acts,' i.e., repeatedly following or harassing another person. The phrase 'repeatedly follows' was evaluated by the Superior Court of Connecticut in [State v. Culmo, 43 Conn. Sup. 46, 642 A.2d 90
(1993)], when the court was reviewing the constitutionality of Connecticut's stalking law. The court stated:
 " 'A willful and repeated "following" or "lying in wait" is required to constitute a violation of the statute. Webster's Ninth New Collegiate Dictionary defines "follows" to mean "to go, proceed, or come after" and "pursue in an effort to overtake." As used in [the stalking statute], which requires that any "following" be "willful" and "repeated," the "following" must have a predatory thrust to it. The statute does not encompass "following" that is aimless, unintentional, accidental or undertaken for a lawful purpose. Of course, "following" implies proximity in space as well as time. Whether someone has deliberately maintained sufficient visual or physical proximity with another person, uninterrupted, over a substantial enough period of time to constitute "following" will depend upon a variety of differing factors in each case. These are appropriate issues for the trier of fact to decide, not this court.'
"642 A.2d at 98-99."
Although the words "repeatedly" and "series" are not defined in the Alabama Code, we do not find that that fact renders the stalking law vague. It is well accepted that a court, in interpreting a statute, will give words used therein their " 'natural, plain, ordinary, and commonly understood meaning.' "Ex parte Etowah County Board of Education, 584 So.2d 528, 530
(Ala. 1991); Alabama Farm Bureau Mut. Cas.Ins. Co. v. City ofHartselle, 460 So.2d 1219 (Ala. 1984); Morgan County Commissionv. Powell, 292 Ala. 300, 293 So.2d 830 (1974). The ordinary meaning of the word "repeatedly" can be found in 37 Words andPhrases 3 — "more than once." The Oklahoma Court of Criminal Appeals, in State v. Saunders, 886 P.2d 496, 497 (Okla.Cr.App. 1994), addressing the *Page 227 
constitutionality of Oklahoma's stalking statute, stated:
 "We have no difficulty in concluding that 21 O.S.Supp. 1993, § 1173[21-1173] gives fair notice of the prescribed activity and is not void for vagueness on its face.
 "The legislature has responded to the increased public awareness and media attention devoted to the stalking of an individual. A careful balance must be achieved for a statute addressing stalking to be effective.
". . . .
 "We believe 21 O.S.Supp. 1993, § 1173[21-1173] provides ample clarity and notice. The word 'repeatedly' adds to the specific intent required to commit the offense as well as the restraint law enforcement officers and prosecutors must follow. Not until a perpetrator follows or harasses a victim more than once does the conduct rise to a criminal level. Additionally, by using the words, 'willfully and maliciously,' the legislature has provided that it is the perpetrator's intent which triggers this statute. This construction is consistent with the decisions in other jurisdictions. See Pallas v. State, 636 So.2d 1358 (Fla.App. 3 Dist. 1994); People v. Heilman, 25 Cal.App.4th 391, 30 Cal.Rptr.2d 422 (1994)."
(Emphasis added.)
When the ordinary and common meaning of the term "repeatedly" is applied to this statute, it is evident that the statute proscribes the conduct of a perpetrator who follows or harasses a victim "more than once" and who makes a credible threat with the intent to place that victim in reasonable fear of death or serious bodily injury. When a perpetrator follows or harasses a victim "more than once," his conduct becomes criminal.
The word "series" is defined in 38A Words and Phrases 288 as "things or events standing or succeeding in order and having a like relationship to each other." The offense of stalking is a continuing offense in that it is a pattern of conduct involving acts "succeeding in order and having a like relationship to each other," which acts are unprotected by the Constitution.
Lastly, we do not find merit in Randall's contention that a person cannot be convicted of stalking unless the person knew or should have known the number of times and the specific time period the person must follow or harass the victim in order to be guilty of the offense of "stalking." "Stalking statutes must be defined as broadly as possible to maximize victim protection, but narrowly enough to prevent serious abuse."Saunders, 886 P.2d at 497. Because Alabama's stalking law defines the offense with sufficient definiteness so that ordinary people can understand what conduct is prohibited and does not do so in a manner that encourages arbitrary and discriminatory enforcement, it cannot be declared unconstitutional on grounds of vagueness and overbreadth.Culbreath v. State, supra; Senf v. State, 622 So.2d 435
(Ala.Cr.App. 1993). See also Kolender v. Lawson, 461 U.S. 352,357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).
Based on the foregoing, the order of the trial court's finding the stalking law to be unconstitutional was improper.
 II
The State argues that the trial court erred in finding that the wording of the stalking law "opened the door to possible violations" of the Double Jeopardy Clause of the United States Constitution.
Initially, we note that double jeopardy may arise in one of three ways: a second prosecution for the same offense after an acquittal; a second prosecution for the same offense after a conviction; and multiple charges and punishments for the same offense. See United States v. Ferguson, 847 F. Supp. 940
(S.D.Ala. 1994). A statute proscribing a substantive offense may not, in and of itself, violate the Double Jeopardy Clause. Moreover, in this State, "[j]eopardy only attaches when a jury has been impaneled and sworn and the indictment has been read."Williams v. State, 494 So.2d 819, 821 (Ala.Cr.App. 1986). Additionally, "reprosecution on a dismissed or nolle prossed charge does not violate double jeopardy so long as *Page 228 
the factual elements of the dismissed charge have not been resolved." Williams v. State, supra, at 822. Here, the charges against Randall were dismissed at a pretrial hearing on his motion to dismiss without any resolution of factual issues of the trial court. Thus, Randall was not placed in double jeopardy.
This judgment is reversed and the cause remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
All judges concur.