The appellant, William Leamon Bartlett, was convicted of one count of stalking, a violation of § 13A-6-90, Code of Alabama 1975. He was sentenced to 10 years in the state penitentiary. He raises three issues on appeal.
 I
The appellant contends that he was denied a fair trial by the failure of a juror to respond to a question on voir dire.
 " 'It is well established that when a trial court is presented with a motion for a new trial based on an improper response or a lack of response to a question on voir dire, the court must determine whether the response or lack of response has resulted in probable prejudice to the movant. Freeman v. Hall, 286 Ala. 161, 238 So.2d 330
(1970). The question of prejudice is primarily within the trial court's sound discretion, and its ruling on the motion for new trial will be reversed only upon a showing of an abuse of that discretion. Id. at 167, 238 So.2d 330 at 332.' "
Thomas v. State, 622 So.2d 415, 418 (Ala.Cr.App. 1992), cert. quashed, 622 So.2d 420 (Ala. 1993) quoting, Eaton v. Horton,565 So.2d 183, 185 (Ala. 1990). " 'The proper inquiry is whether the defendant's rights were prejudiced by the juror's failure to properly and correctly respond.' Limbaugh v. State,581 So.2d 5, 8 (Ala.Cr.App. 1991)." 622 So.2d at 418.
The record reflects that during voir dire, the state asked the venire if anyone had ever felt as though they were being stalked or if they had been a victim of a stalking. No one responded to this question.
The jury was selected and sworn and found the appellant guilty. After sentencing, the appellant moved for a new trial, stating as one ground that one of the jurors had been involved in a stalking incident similar to the present case, but failed to respond during voir dire.
A hearing was held on the motion for a new trial and the juror testified that she did not recall having been asked during voir dire examination whether she had ever been the victim of a stalking. She explained that she had been involved in a divorce in 1974, that the circumstances surrounding the divorce were not dangerous, and that she did not consider herself to have been a victim. Finally, she testified, "When I let them know that I knew they were following me, it stopped."
Linda Hayes, the appellant's sister, testified that she was present in the courtroom during the voir dire examination and that a question about stalking was asked. Hayes testified that the juror raised her hand where it could barely be seen by the lawyers and trial court. Hayes stated that she had a different view and that she saw the juror raise her hand but that there was a tall man sitting in front of the juror. *Page 307 
On cross-examination, Hayes admitted that she told this to the appellant's trial counsel after the jury was selected, and before the lunch break. The appellant's trial counsel did not bring this to the attention of the trial court until his motion for a new trial.
This Court in Hurley v. State, 568 So.2d 359
(Ala.Cr.App. 1990), discussed a similar issue. In Hurley, the appellant was aware during voir dire examination that a juror knew him. When the juror was asked if she knew any of the parties to the case she failed to respond. The appellant sat mute and never told anyone until after the jury returned an unfavorable verdict. This Court held:
 "Thus, even if we determined that [the juror] actually 'knew' the appellant, we could not allow the appellant to benefit by his silence. The trial judge properly denied the appellant's motion for a new trial. See Smithson v. State, 50 Ala. App. 318, 278 So.2d 766 (1973)."
568 So.2d at 362.
The appellant's trial counsel knew, early in the trial, about the alleged failure to respond correctly, yet he failed to bring it to the court's attention.
The Supreme Court of Alabama in Moon v. Nolen, 294 Ala. 454,318 So.2d 690 (1975), discussed this issue. In Moon, a juror had failed to respond affirmatively to a question on voir dire. Appellant's counsel, knew of the failure. However, the appellant's counsel failed to make this fact known to the trial court before the end of trial. The Court held:
 "The evidence before the trial court, if believed, supports his [denial of the appellant's motion for a new trial]. Specifically, there was evidence before the court to support the proposition that counsel for appellant were speculating on the outcome of the case because one of the appellant's counsel had learned of the juror's wife being in defendant hospital before the trial was over but made no effort to bring the matter to the attention of the court."
294 Ala. at 461, 318 So.2d at 696.
The evidence presented to the trial court at the hearing supports its denial of the appellant's motion for a new trial. For the court to have granted the motion would have rewarded the appellant for his silence. No error occurred here.
 II
Second, the appellant contends that the evidence was insufficient to sustain his conviction for stalking.
The state's evidence tended to show that the appellant and Jennifer Bartlett's marriage deteriorated after an incident on August 9, 1995, as a result of which the appellant was convicted of assault. On August 10, 1995, Bartlett went to an attorney to file for divorce. A restraining order was entered against Bartlett.
On the following weekend, the appellant came to Bartlett's mother's house to apologize. He burned something in the front yard. Bartlett testified that she never figured out what was burned. On August 30, 1995, Bartlett's car was stolen. The appellant telephoned her and told her that he had the car. She said that she had reported it stolen. He responded that she would not get it back.
Bartlett then returned to the attorney's office for a second restraining order, which was entered. After the second order was entered, the appellant was waiting for Bartlett at the Texaco Service Station in Addison, where she regularly stopped for coffee and cigarettes. Later she saw his car at the red light where she turned to go to work. While at work, she would see him drive by.
The appellant began making threatening telephone calls to Bartlett's residence. She had her telephone number changed four times, to no avail.
Between August 30 and September 22, 1995, several events occurred. A gun was stolen from Bartlett's car; her oldest son's graduation ring was stolen from her residence, along with a shotgun given to him by his father; and one Friday night, while her sister-in-law and her children were visiting, she heard someone outside throwing things at her house. She did not go outside to investigate, but telephoned the police. They found nothing and left. After the police left, *Page 308 
the noises continued. Another time, while she was at her sister-in-law's, the appellant came by at about 7:00 a.m. and beat on the door. He jerked the front door open and told Bartlett's sister-in-law that he did not want Bartlett there. He left only after Bartlett's oldest son pulled a shotgun on him.
The appellant testified and denied calling Bartlett on the telephone. He admitted to being at the Texaco Station, but stated that he did not know that she would be coming there. He then stated that the reason he was at the Texaco was because he wanted to see his baby, and he was wondering who was looking after the baby at that time.
On cross-examination, the appellant admitted to having been convicted of third degree assault in 1984, but denied that he had been convicted of aggravated assault in Florida in 1991. He also confessed to a conviction for illegally possessing a gun after having been convicted of a felony.
The appellant argues that while his conduct may be offensive or even reprehensible, it is not criminal.
 " 'In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485 (Ala.Cr.App. 1984), aff'd, 471 So.2d 493 (Ala. 1985). Furthermore, a judgment of conviction will not be set aside on the ground of insufficiency of the evidence unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the judgment is so decided as to clearly convince the reviewing court that it was wrong and unjust. Jackson v. State, 516 So.2d 726 (Ala.Cr.App. 1985).' "
Burell v. State, 680 So.2d 975, 977 (Ala.Cr.App. 1996) quoting,Powe v. State, 597 So.2d 721, 724 (Ala. 1992).
Sufficient evidence was presented to show that the appellant was guilty of the crime of stalking. The testimony of the victim by itself is sufficient to establish a prima facie case.A.B.T. v. State, 620 So.2d 120, 122 (Ala.Cr.App. 1992), cert. denied, 620 So.2d 120 (Ala.Cr.App. 1993). "Any conflict in the evidence presents a question for the trier of fact." 620 So.2d at 122. The conflicting evidence presented in this case "presents a jury question not subject to review on appeal."McMillian v. State, 594 So.2d 1253, 1263 (Ala.Cr.App. 1991).
 III
Last, the appellant contends that the trial court erred by failing to charge the jury correctly regarding the term "harass."
The crime of stalking is defined in § 13A-6-90, Code of Alabama 1975:
 "A person who intentionally and repeatedly follows or harasses another person and who makes a credible threat, either expressed or implied, with the intent to place that person in reasonable fear of death or serious bodily harm is guilty of the crime of stalking."
The definition of "harasses" is found in § 13A-46-92(c):
 "Harasses. Engages in an intentional course of conduct directed at a specified person which alarms or annoys that person, or interferes with the freedom of movement of that person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress. Constitutionally protected conduct is not included within the definition of this term."
(Emphasis added.)
The court's instruction regarding the element of harassing was as follows:
 "Now, to 'harass' is to engage in an intentional, state of mind again, to engage in an intentional course of conduct directed at a specified person which alarms or annoys that person or interferes with the freedom of movement of that person and which serves no legitimate purpose, the course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress and must actually cause substantial and emotional distress. A course of conduct is a pattern of conduct *Page 309 
composed of a series of acts over a period of time which evidences a continuity of purpose."
The appellant timely objected to this charge, stating that the definition omitted the last sentence of § 13A-6-92(c) and was therefore flawed.
To review the adequacy of the jury charges, this Court shall "examine the entire charge as a whole, and the language of the charge must be given a reasonable construction, not a strained and unreasonable one. An inadvertent error which does not cause prejudice is not reversible error." Gunter v. State,665 So.2d 1008, 1014 (Ala.Cr.App. 1995).
The appellant cites three cases where the trial judge included the omitted portion as part of the jury charge,Culbreath v. State, 667 So.2d 156 (Ala.Cr.App. 1995); Morton v.State, 651 So.2d 42 (Ala.Cr.App. 1994); and State v. Randall,669 So.2d 223 (Ala.Cr.App. 1995).
The state contends that the portion of the charge which reads, "serves no legitimate purpose," clearly required the jury to conclude that the conduct of the appellant was wrongful the state also argues that the omitted language was merely duplicative and, therefore, not required.
Reviewing the jury charge as a whole we find that the appellant suffered no prejudice. The "serves no legitimate purpose" language was sufficient when viewed in context of the entire jury charge. No error occurred here.
For the reasons stated above, the judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.