636 So.2d 1358 (1994)
John L. PALLAS, Appellant,
v.
The STATE of Florida, Appellee.
No. 93-1493.
District Court of Appeal of Florida, Third District.
May 3, 1994.
Rehearing Denied June 14, 1994.
*1359 Bennett H. Brummer, Public Defender, and Manuel Alvarez, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Michael J. Neimand, Asst. Atty. Gen., and Parker D. Thomson, Sp. Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and COPE and GODERICH, JJ.
COPE, Judge.
John L. Pallas appeals his conviction and sentence for aggravated stalking. We affirm.
Defendant was charged with aggravated stalking in violation of subsection 784.048(3), Florida Statutes (Supp. 1992). He challenged the constitutionality of the statute, on federal and state grounds, arguing that the statute is vague and overbroad. The trial court entered a written order finding the statute constitutional. State v. Pallas, 1 Fla. L. Weekly Supp. 442 (Fla. 11th Cir.Ct. May 14, 1993).[1] Defendant pled nolo contendere, reserving the right to appeal the order finding the statute constitutional. This appeal follows:
The operative facts are set out in the trial court's order:
On Sunday, January 24, 1993, the Defendant, soon to be the ex-husband of Edie Pallas, began calling the home of Penny and Harry Ragland, Edie's parents. The calls began at 7:00 A.M., waking Mr. & Mrs. Ragland and continued throughout the day, and numbering fifty times or more. Mr. & Mrs. Ragland were hiding their daughter, who was obtaining a divorce from the Defendant. The Defendant had beaten Edie and had broken her jaw during the course of the marriage. The calls were so continuous that the Raglands had to remove the phone from the hook several times during the day.
The Defendant demanded to know where Edie was. He screamed and cursed at the Raglands, he threatened to "get them," he told them he "had a gun" and "he was going to kill them." The Raglands, in fear for their lives, called the police.
Defendant was charged with aggravated stalking. The offense is defined as follows:
Any person who willfully, maliciously, and repeatedly follows or harasses another person, and makes a credible threat with the intent to place that person in reasonable fear of death or bodily injury, commits the offense of aggravated stalking, a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
§ 784.048(3), Fla. Stat. (Supp. 1992).
Under the stated facts, the defendant committed acts of harassment and made threats, but did not follow the victim. Consequently, the portion of the statute applicable to defendant is that part which punishes someone who "willfully, maliciously, and repeatedly ... harasses another person, and makes a credible threat with the intent to place that person in reasonable fear of death or bodily injury." § 784.048(3), Fla. Stat. (Supp. 1992).[2]
The statute contains several definitions, as follows:
(a) "Harasses" means to engage in a course of conduct directed at a specific person that causes substantial emotional distress in such person and serves no legitimate purpose.
(b) "Course of conduct" means a pattern of conduct composed of a series of acts *1360 over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of "course of conduct." Such constitutionally protected activity includes picketing or other organized protests.
(c) "Credible threat" means a threat made with the intent to cause the person who is the target of the threat to reasonably fear for his or her safety. The threat must be against the life of, or a threat to cause bodily injury to, a person.
Id. § 784.048(1)(a)-(c).
Defendant first contends that the statute is unconstitutionally vague.
We begin with the proposition that the statute is accorded a strong presumption of validity. See United States v. National Dairy Products Corp., 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); see also State v. Stalder, 630 So.2d 1072, 1076 (Fla. 1994); State v. Elder, 382 So.2d 687, 690 (Fla. 1980). "[S]tatutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." United States v. National Dairy Products Corp., 372 U.S. at 32, 83 S.Ct. at 597 (citations omitted).
The Supreme Court has said, "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted). "In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged." United States v. National Dairy Products Corp., 372 U.S. at 33, 83 S.Ct. at 598 (citation omitted); see also Parker v. Levy, 417 U.S. 733, 757, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974); Greenway v. State, 413 So.2d 23, 24 (Fla. 1982); State v. Olson, 586 So.2d 1239, 1242 (Fla. 1st DCA 1991).
Professor Tribe has summarized the applicable federal principles as follows:
As a matter of due process, a law is void on its face if it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." Such vagueness occurs when a legislature states its proscriptions in terms so indefinite that the line between innocent and condemned conduct becomes a matter of guesswork. This indefiniteness runs afoul of due process concepts which require that persons be given fair notice of what to avoid, and that the discretion of law enforcement officials, with the attendant dangers of arbitrary and discriminatory enforcement, be limited by explicit legislative standards.
But vagueness is not calculable with precision; in any particular area, the legislature confronts a dilemma: to draft with narrow particularity is to risk nullification by easy evasion of the legislative purpose; to draft with great generality is to risk ensnarement of the innocent in a net designed for others. Because that dilemma can rarely be resolved satisfactorily, the Supreme Court will not ordinarily invalidate a statute because some marginal offenses may remain within the scope of a statute's language.
Laurence H. Tribe, American Constitutional Law § 12-31, at 1033-34 (2d ed. 1988) (footnotes omitted).
We have no difficulty in concluding that the statute gives fair notice of the proscribed activity, and is not void for vagueness. Defendant contends that in the statutory phrase, "willfully, maliciously, and repeatedly follows or harasses another person," § 784.048(3), Fla. Stat. (Supp. 1992), "willfully, maliciously, and repeatedly" only modifies the word "follows" and does not modify the word "harasses." From this faulty premise defendant argues that the statute is therefore vague as regards the term "harasses." We agree with the trial court that "willfully, maliciously, and repeatedly" does in fact modify the word "harasses." The language of subsection 784.048(3), in conjunction with the definitions, is reasonably clear and specific.
*1361 Defendant also argues that the statutory definition of "harasses," id. § 784.048(1)(a), is vague. Under the statute, "`Harasses' means to engage in a course of conduct directed at a specific person that causes substantial emotional distress in such person and serves no legitimate purpose." Id. Defendant reads the statute to create an entirely subjective standard for "substantial emotional distress." Thus, reasons defendant, if the victim is an unusually sensitive person the victim may suffer "substantial emotional distress" from entirely innocent social contact. Defendant contends that the statute creates a standard which is too vague and uncertain to be enforced.
In our view the statute creates no such subjective standard, but in fact creates a "reasonable person" standard. The stalking statute bears a family resemblance to the assault statutes. See § 784.011(1), Fla. Stat. (1993) ("An `assault' is an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent."); id. § 784.021 (aggravated assault).[3] Under the assault statutes, it is settled that a "well-founded fear" is measured by a reasonable person standard, not a subjective standard. Indeed, "where the circumstances were such as to ordinarily induce fear in the mind of a reasonable man, then the victim may be found to be in fear, and actual fear need not be strictly and precisely shown." Gilbert v. State, 347 So.2d 1087, 1088 (Fla. 3d DCA 1977) (citations omitted); McClain v. State, 383 So.2d 1146, 1147 (Fla. 4th DCA), review denied, 392 So.2d 1376 (Fla. 1980). The same principle applies to the definition of "harasses" under the stalking statute; the legislature has proscribed willful, malicious, and repeated acts of harassment which are directed at a specific person, which serve no legitimate purpose, and which would cause substantial emotional distress in a reasonable person. See generally State v. Elder, 382 So.2d at 689 (upholding constitutionality of statute forbidding "the making of an anonymous telephone call with the intent to annoy, abuse, threaten, or harass the recipient of the call... .").
We concur with the trial court that the statute is not vague and gives fair notice of the conduct which is proscribed. The defendant's conduct in this case falls squarely within the ambit of the statute.[4]
Defendant also argues that the statute is overbroad. The Supreme Court has said:
The traditional rule is that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court. In Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)], we recognized that this rule reflects two cardinal principles of our constitutional order: the personal nature of constitutional rights, and prudential limitations on constitutional adjudication. In United States v. Raines, [362 U.S. 17, 21, 80 S.Ct. 519, [522], 4 L.Ed.2d 524 (1960)], we noted the "incontrovertible proposition" that it "`would indeed be undesirable for this Court to consider every conceivable situation which might possibly arise in the application of complex and comprehensive legislation[.]'" By focusing on the factual situation before us, and similar cases necessary for development of a constitutional rule, we face "flesh-and-blood" legal problems with data "relevant and adequate to an informed judgment." This practice also fulfills a valuable institutional purpose: it allows state courts the opportunity to construe a law to avoid constitutional infirmities.
What has come to be known as the First Amendment overbreadth doctrine is one of the few exceptions to this principle and must be justified by "weighty countervailing *1362 policies." The doctrine is predicated on the sensitive nature of protected expression: "persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression." It is for this reason that we have allowed persons to attack overly broad statutes even though the conduct of the person making the attack is clearly unprotected and could be proscribed by a law drawn with the requisite specificity.
The scope of the First Amendment overbreadth doctrine, like most exceptions to established principles, must be carefully tied to the circumstances in which facial invalidation of a statute is truly warranted. Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, we have recognized that the overbreadth doctrine is "strong medicine" and have employed it with hesitation, and then "only as a last resort." Broadrick, 413 U.S., at 613, 93 S.Ct., at 2916. We have, in consequence, insisted that the overbreadth involved be "substantial" before the statute involved will be invalidated on its face.
New York v. Ferber, 458 U.S. 747, 767-69, 102 S.Ct. 3348, 3360-61, 73 L.Ed.2d 1113 (1982) (citations and footnotes omitted); see also Southeastern Fisheries Ass'n, Inc. v. Department of Natural Resources, 453 So.2d 1351, 1353 (Fla. 1984).[5]
In Broadrick v. Oklahoma, the Court said:
Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute. Equally important, overbreadth claims, if entertained at all, have been curtailed when invoked against ordinary criminal laws that are sought to be applied to protected conduct. In Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), Jesse Cantwell, a Jehovah's Witness, was convicted of common-law breach of the peace for playing a phonograph record attacking the Catholic Church before two Catholic men on a New Haven street. The Court reversed the judgment affirming Cantwell's conviction, but only on the ground that his conduct, "considered in the light of the constitutional guarantees," could not be punished under "the common law offense in question." Id., at 311, 60 S.Ct., at 906 (footnote omitted). The Court did not hold that the offense "known as breach of the peace" must fall in toto because it was capable of some unconstitutional applications, and, in fact, the Court seemingly envisioned its continued use against "a great variety of conduct destroying or menacing public order and tranquility." Id., at 308, 60 S.Ct., at 905. Similarly, in reviewing the statutory breach-of-the-peace convictions involved in Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963), and Cox v. Louisiana, supra, 379 U.S. 536, at 544-552, 85 S.Ct. [453], at 458-463 [, 13 L.Ed.2d 471], the Court considered in detail the State's evidence and in each case concluded that the conduct at issue could not itself be punished under a breach-of-the-peace statute. On that basis, the judgments affirming the convictions were reversed. Additionally, overbreadth scrutiny has generally been somewhat less rigid in the context of statutes regulating conduct in the shadow of the First Amendment, but doing so in a neutral, noncensorial manner.
It remains a "matter of no little difficulty" to determine when a law may properly be held void on its face and when "such summary action" is inappropriate. Coates v. City of Cincinnati, 402 U.S. 611, 617, 91 S.Ct. 1686, 1689, 29 L.Ed.2d 214 (1971) (opinion of Black, J.). But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, *1363 attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct  even if expressive  falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect  at best a prediction  cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. Cf. Alderman v. United States, 394 U.S. 165, 174-175, 89 S.Ct. 961, 966-967, 22 L.Ed.2d 176 (1969). To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.
413 U.S. at 613-15, 93 S.Ct. at 2916-18 (citations and footnotes omitted).
Defendant argues that the overbreadth doctrine is applicable here because the statute is capable of being applied to speech. Indeed, speech was involved in the series of harassing telephone calls made by defendant. Defendant contends that the statute could be applied to entirely innocent conduct. He suggests that if an overzealous suitor repeatedly telephoned an unusually sensitive individual in hopes of establishing a romantic relationship, the suitor could be charged under this statute. Defendant also suggests that the statute could be applied against a person who played practical jokes, or someone who uses a figure of speech such as "You'll get yours!"
In setting forth these examples, the defendant relies on the erroneous interpretation of the statute discussed earlier in this opinion. The conduct of the defendant must be willful, malicious, and repeated. § 784.048(3), Fla. Stat. (Supp. 1992). There must be a course of conduct which would cause substantial emotional distress to a reasonable person in the position of the victim. Id. § 784.048(1)(a). The conduct must serve no legitimate purpose. Id. Furthermore, the statute also provides, "Constitutionally protected activity is not included within the meaning of `course of conduct.' Such constitutionally protected activity includes picketing or other organized protests." Id. § 784.048(1)(b). Finally, for aggravated stalking under subsection 784.048(3), there must also be a credible threat made with the intent to place the victim in reasonable fear of death or bodily injury. Id. § 784.048(1)(c), (3).
In State v. Elder, the Florida Supreme Court rejected an overbreadth challenge to a statute which forbade "the making of an anonymous telephone call with the intent to annoy, abuse, threaten, or harass the recipient of the call... ." 382 So.2d at 689. The court there rejected an argument similar to the argument made by the defendant in this case:
That this conduct may be effected in part by verbal means does not necessarily invalidate the statute on freedom of speech grounds. At most, the use of words as the method with which to harass the recipient of the call involves conduct mixed with speech, to which the controlling constitutional considerations differ somewhat from those applied to pure speech.
Id. at 690. The court concluded that the claim of overbreadth "is not real and substantial judged in relation to the statute's plainly legitimate sweep." Id. Likewise in the present case the statute is not overbroad.
Defendant also challenges the portion of subsection 784.048(3), Florida Statutes (Supp. 1992), which punishes someone who "willfully, maliciously, and repeatedly follows ... another person, and makes a credible threat with the intent to place that person in reasonable fear of death or bodily injury... ." Id. Defendant was not prosecuted for following the victim. Instead he was prosecuted under the "harassment plus *1364 threat" portion of the statute. In our view defendant is without standing to challenge the statutory term "follows" on grounds of vagueness. Parker v. Levy, 417 U.S. at 757, 94 S.Ct. at 2562; Wells v. State, 402 So.2d 402, 405 (Fla. 1981).
For the same reason we doubt defendant's standing to raise an overbreadth challenge to the "follows" portion of the statute.[6] Assuming arguendo that defendant may make an overbreadth challenge of the "follows" portion of the statute, we conclude that the statute is not overbroad. "Follows" is directed primarily at conduct, not First Amendment expression. This portion of the statute does not suffer from real and substantial overbreadth judged in relation to the statute's plainly legitimate sweep. See Broadrick v. Oklahoma, 413 U.S. at 615, 93 S.Ct. at 2917; State v. Elder, 382 So.2d at 690.
We reject the defendant's challenge to the constitutionality of subsection 784.048(3), Florida Statutes (Supp. 1992). In so holding we concur with the Fifth District Court of Appeal. Bouters v. State, 634 So.2d 246 (Fla. 5th DCA 1994).
Affirmed.
NOTES
[1] The trial court's order was cited with approval in Bouters v. State, 634 So.2d 246 (Fla. 5th DCA 1994).
[2] The portion of the statute relating to following and threatening a victim, id., is reviewed at the conclusion of this opinion.
[3] The stalking statute is codified as part of chapter 784, entitled "Assault; Battery; Culpable Negligence."
[4] The trial court's opinion pointed out that a number of the terms used in the aggravated stalking statute are similar to terminology used in other civil or criminal statutes. See State v. Pallas, 1 Fla. L. Weekly Supp. at 443-44.
[5] "Vagueness is a constitutional vice conceptually distinct from overbreadth in that an overbroad law need lack neither clarity nor precision, and a vague law need not reach activity protected by the first amendment." Laurence H. Tribe, supra § 12-31, at 1033 (footnotes omitted).
[6] In Broadrick v. Oklahoma, the overbreadth challenge was directed exclusively at subsections 6 and 7 of section 818 of Oklahoma's Merit System of Personnel Administration Act. 413 U.S. at 602-03 & n. 1, 93 S.Ct. at 2910-12 & n. 1. There, as here, the challenge was leveled at only the operative portions of the statute in question. "A litigant is not heard to urge the unconstitutionality of a statute who is not harmfully affected by the particular features of the statutes alleged to be in conflict with the constitution." State ex rel. Hoffman v. Vocelle, 159 Fla. 88, 98, 31 So.2d 52, 57 (1947).

The term "follows" is severable. Assuming arguendo "follows" were found to be constitutionally infirm, the remedy would be to narrow the construction of the statute by invalidating "follows" but leaving the remainder of subsection 784.048(3) intact. See State v. Stalder, 630 So.2d at 1076 (Fla. 1994) (court should adopt narrowing construction of statute if necessary to preserve its constitutionality, where it is possible to do so).