**Jerry Lee STALEY, Petitioner,**

v.

**Kurt JONES, Warden, Respondent.**

No. 1:99–CV–312.

United States District Court,
W.D. Michigan,
Southern Division.

July 14, 2000.

David A. Dodge, David A. Dodge, PC, Grand Rapids, MI, for Jerry Lee Staley.

Janet A. VanCleve, Jennifer M. Granholm, Attorney General, Habeas Corpus Div., Lansing, MI, for Kurt Jones, Warden.

### *OPINION*

ENSLEN, Chief Judge.

This matter is before the Court on Jerry Lee Staley's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2254. On April 11, 2000, United States Magistrate Judge Timothy Greeley filed a Report recommending that the Petition be denied. On April 21, 2000, Staley filed Objections to that Report. For the reasons discussed below, the Court adopts in part, and rejects in part, the Magistrate Judge's Report.

## Procedural History

On June 29, 1994, after a jury trial, Staley was convicted in Michigan state court of Aggravated Stalking in violation of Mich. Comp. Laws § 750.411i. Also on that date, Staley pled guilty to being a habitual offender, in violation of Mich. Comp. Laws § 769.12. Staley was sentenced to life imprisonment.

Staley appealed his conviction and sentence through the state courts. Staley argued that Section 750.411i was unconstitutionally vague, that the trial court committed reversible error in allowing the Prosecutor to amend the Information, that the trial court abused its discretion by denying his motion to sever his charges, and that the sentence was excessive. The Michigan Court of Appeals upheld the conviction but determined that the sentence was excessive and disproportionate. Thereafter, Staley was re-sentenced to 15–25 years of imprisonment. Staley pressed his appeal of the conviction to the Michigan Supreme Court which denied leave to appeal on May 30, 1997. Petitioner has fully exhausted his remedies in state court.

## Habeas Corpus Standard

Staley's Petition for a Writ of Habeas Corpus is governed by 28 U.S.C. Section 2254(d)(1). Pursuant to Section 2254(d)(1), a writ of habeas corpus may only issue if the state court adjudication resulted in a decision that:

> (1) 'was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States.'

*Williams v. Taylor*, —— U.S. ——, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring). The Supreme Court has also explained that:

> [u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*

## Analysis

Staley asserts that he is entitled to habeas corpus relief because Michigan's Aggravated Stalking statute is unconstitutionally vague, places defendants at risk of double jeopardy, and unconstitutionally shifts the burden of proof to the defendant. The Magistrate Judge rejected each of these arguments in his Report.

Staley objects to the Report on three principal grounds. First, Staley attacks the Magistrate Judge's conclusions regarding his vagueness challenge. In particular, Staley contends that the Magistrate Judge erred when he determined that the Michigan Court of Appeals' decision in *People v. White*, 212 Mich.App. 298, 536 N.W.2d 876 (1995), had cured any vagueness in the statute as written. Second, Staley asserts that the Magistrate Judge incorrectly analyzed his Double Jeopardy Clause challenge by focusing on the wrong legal issue. Staley argues that his challenge derives from the successive prosecution prohibition of the Double Jeopardy Clause as opposed to the multiple punishment prohibition. Third, Staley argues that the Magistrate Judge's analysis of the burden-shifting challenge was erroneous because it ignored the possibility that Staley's trial motions for directed verdict, dismissal, and judgment notwithstanding the verdict were influenced by an improper presumption set forth in the statute.

The Court determines that Staley's objections to the Magistrate Judge's recommendations regarding his vagueness arguments have merit, but that his objections concerning the double jeopardy challenge and the burden-shifting challenge do not.

### 1. *Double Jeopardy*

The Magistrate Judge's Report recommended that Staley's challenge based on

the Double Jeopardy Clause of the Fifth Amendment be rejected because Staley was not subject to cumulative or multiple punishments for the same conduct. Staley responds that his claim is not based on the cumulative or multiple punishment prohibition, but instead on the prohibition against multiple prosecutions. Staley argues that the Double Jeopardy Clause was violated because he was placed at risk of having additional charges brought against him for the same conduct that formed the basis of his conviction for Aggravated Stalking.

■ As the Magistrate Judge noted, Staley does not have standing to raise a double jeopardy challenge because he was only convicted and sentenced for the single offense of Aggravated Stalking. He was never charged or tried with another crime. Therefore, regardless of the way in which Staley styles his double jeopardy challenge, he is without standing and his objection is overruled.

## 2. *Burden Shifting*

The Report also recommended that the Court reject Staley's claim that the presumption found in the Aggravated Stalking statute unconstitutionally shifted the burden of proof.[1] The Magistrate Judge reasoned that because the jury was never instructed as to the presumption, Staley was not subject to any burden-shifting and his claim was without merit. Staley responds that the presumption affected his trial because it may have influenced the trial judge's decision to deny his motions for directed verdict, dismissal, and judgment notwithstanding the verdict. Therefore, Staley argues that he was subject to an unconstitutional shifting of the burden of proof.

■ Staley's argument is misplaced. The Supreme Court has explained that in criminal cases, the ultimate test of a presumption's constitutionality is that "the [presumption] must not undermine the fact finder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 156, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Here, the jury was the fact finder and it determined that Staley was guilty of Aggravated Stalking without ever being instructed about the presumption. Therefore, there is absolutely no possibility that Staley's conviction resulted from an unconstitutional burden shift. Even if the trial judge were influenced by the presumption when he ruled on Staley's motions, a point which Staley is unable to support with any evidence from the record, these rulings did not influence the final determination of Staley's guilt or innocence by the jury. As a result, Staley's objection is overruled.

## 3. *Vagueness*

Staley's most persuasive argument is that Michigan's Aggravated Stalking statute is unconstitutionally vague. This argument is grounded in two distinct legal theories. First, Staley argues that the statute is overbroad and infringes upon conduct protected by the First Amendment. Second, Staley argues that the statute violates the Due Process Clause of the Fourteenth Amendment because it: (a) fails to define the offense with sufficient definiteness such that an ordinary person could understand what conduct is prohibited; and (b) fails to establish ade-

---

1. The presumption provides:

 In a prosecution for a violation of this section, evidence that the defendant continued to engage in a course of conduct involving repeated unconsented contact with the victim after having been requested by the victim to discontinue the same or a different form of unconsented con-

tact, and to refrain from any further unconsented contact with the victim, shall give rise to a rebuttal presumption that the continuation of the course of conduct caused the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

Mich. Comp. Laws § 750.411i(5) (1994).

quate enforcement standards such that police officers are likely to engage in arbitrary enforcement.

The Court's analysis of Staley's vagueness challenge is divided into five parts. Part A examines the text of the statute. Part B sets forth the specifics of Staley's vagueness challenge. Part C reviews the legal standards which are applicable to Staley's challenge. Part D explores the relevancy of state court decisions interpreting the statute. Part E draws legal conclusions.

## A. The Statute

Michigan Compiled Laws Section 750.411i(3) provides that Aggravated Stalking is a felony punishable by imprisonment for not more than five years or a fine of not more than $10,000, or both. Section 750.411i(2) provides that an individual who engages in stalking is guilty of Aggravated Stalking if one of five factors is present.[2] The statute defines stalking as:

... a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

Mich. Comp. Laws § 750.411i(e) (1994). This stalking definition contains three elements. First, stalking requires a willful course of conduct involving repeated or continuing *harassment* of another. Second, it requires that the *harassment* would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested. Third, it requires that the *harassment* actually cause the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested. *See People v. Kieronski,* 214 Mich.App.

222, 542 N.W.2d 339, 343–44 (1995) (discussing requirements of the statute). Each of these elements requires the existence of harassment. The statute defines harassment as:

conduct toward a victim that includes, but is not limited to, repeated or continuing unconsented contact, that would cause a reasonable individual to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose.

Mich. Comp. Laws § 750.411i(d) (1994). This definition of harassment can be broken down into three parts. First, the definition provides that "harassment means conduct directed toward a victim." *Id.* Second, the definition explains that "[this conduct] includes, but is not limited to, repeated or continuing unconsented contact, that would cause a reasonable individual to suffer emotional distress." *Id.* Third, the definition states that "[h]arassment does not include constitutionally protected activity or conduct that serves a legitimate purpose." *Id.*

The Court turns now to the specific portions of the statute which Staley asserts to be vague.

## B. Staley's Argument

Staley argues that the statute violates the First Amendment and the Due Process Clause of the Fourteenth Amendment. In particular, Staley asserts that two portions of the statute are vague.

First, he argues that part-two of the harassment definition is unclear because it includes the phrase "includes, but is not limited to." Part-two provides that harassing conduct "includes, but is not limited to" repeated unconsented contacts that cause reasonable emotional distress. *Id.* Staley asserts that the "includes, but is not limited to" phrase indicates that the type

---

**2.** The factors which enhance stalking to Aggravated Stalking are not relevant to Staley's

Petition.

of contacts that follow this phrase (i.e. repeated unconsented contacts) do not necessarily exhaust the types of contacts which may constitute harassment. As a result, Staley contends that the meaning of harassment is uncertain and that the Aggravated Stalking statute is unconstitutionally vague in violation of the First and Fourteenth Amendments.

Second, he argues that part-three of the harassment definition is vague because it excludes "constitutionally protected activity" and "conduct that serves a legitimate purpose" from the definition of harassment without explaining what these phrases mean. Therefore, because it is unclear what types of activity or conduct are removed from the harassment definition by part-three, he argues that the statute violates the First and Fourteenth Amendments.

## C. Applicable Legal Standards

 The Court must determine the proper legal standards to apply to Staley's First and Fourteenth Amendment challenges. It is well-settled that an individual may challenge a statute, on its face, if it infringes on rights protected by the First Amendment. *City of Chicago v. Morales,* 527 U.S. 41, 52, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (Stevens, J., plurality); *Broadrick v. Oklahoma,* 413 U.S. 601, 612–15, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Belle Maer Harbor v. Charter Township of Harrison,* 170 F.3d 553, 557 (6th Cir.1999). Such an attack will be successful upon a showing that the challenged statute trenches upon a substantial amount of First Amendment protected conduct relative to the statute's plainly legitimate sweep. *Id.* As a result, in the instant case, the Court will conduct a facial analysis to determine whether Michigan's Aggravated Stalking statute violates the First Amendment.

 It is less clear, however, whether facial challenges can be mounted on due process grounds. *Compare Morales,* 527 U.S. at 74–84, 119 S.Ct. 1849 (Scalia, J.,

dissenting) (interpreting Supreme Court case law to allow facial challenges to statutes when those statutes infringe on First Amendment conduct but prohibiting such challenges when based upon other grounds unless the challenger can demonstrate that the statute was unconstitutionally applied to him and that the statute could not possibly be applied in a constitutional manner); *Village of Hoffman Estates v. Flipside, Hoffman Estates Inc.,* 455 U.S. 489, 495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (holding that "as applied" analysis was proper standard when due process challenge was made to statute); *Parker v. Levy,* 417 U.S. 733, 757, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (holding that one to whose conduct a statute applies cannot challenge it for vagueness); *with Morales,* 527 U.S. at 53, 64–65, 119 S.Ct. 1849 (Stevens, J., plurality, and O'Connor, J., concurring) (indicating that facial attack on statute can be mounted pursuant to the First Amendment and the Due Process Clause); *Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) ("we conclude [that the statute] is unconstitutionally vague on its face because it encourages arbitrary enforcement by failing to describe with sufficient particularity what a suspect must do in order to satisfy the statute"); *Belle Maer Harbor,* 170 F.3d at 557 (explaining that notwithstanding the general prohibition on facial attacks grounded in the due process clause, "courts may engage in a facial analysis where the enactment imposes criminal sanctions"); *Springfield Armory, Inc. v. City of Columbus,* 29 F.3d 250, 252–54 (6th Cir.1994) (rejecting district court "as applied" analysis of statute with criminal penalties, and concluding that particular statute was unconstitutionally vague on its face). Although the case law on this question is unsettled, the Court believes that Staley's due process arguments warrant a facial analysis of the statute. The Court reaches this conclusion because: (1) the statute at issue contains no substantial *mens rea* requirement; *see*

*Colautti v. Franklin,* 439 U.S. 379, 395, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) (explaining that absence of an intent requirement is an important factor to be considered when determining whether a statute is unconstitutionality vague); (2) the statute carries with it substantial criminal penalties including imprisonment; and (3) the more recent decisions of the Supreme Court and the Sixth Circuit indicate that facial challenges on due process grounds are appropriate. *See Morales,* 527 U.S. at 52, 119 S.Ct. 1849 (upholding facial challenge on due process grounds); *Belle Maer Harbor,* 170 F.3d at 557 (same).

### D. Relevant state court decisions

■ It is well-settled that a federal court should analyze a state statute that is challenged on vagueness grounds as it has been interpreted by the state's highest court. *See Kolender,* 461 U.S. at 355–56 n. 4, 103 S.Ct. 1855 ("for the purpose of determining whether a state statute is too vague or indefinite to constitute valid legislation we must take the statute as read precisely as the highest court of the State has interpreted it."). In the absence of a decision from the state's highest court, federal courts have relied upon decisions of intermediate courts that have limited the scope of a challenged statute as long as there is no indication that the state's highest court would reach a contrary result. *Easyriders Freedom F.I.G.H.T. v. Hannigan,* 92 F.3d 1486, 1494 n. 4 (9th Cir.1996). Here, because the Michigan Supreme Court has not yet interpreted the meaning of Michigan's Aggravated Stalking statute, the Court concludes that the statute must be analyzed in light of any judicial gloss placed upon it by the Michigan Court of Appeals.

In *People v. White,* 212 Mich.App. 298, 536 N.W.2d 876 (1995), the Michigan Court of Appeals considered a challenge to the statute on the grounds that it was vague and abridged the First Amendment rights of defendants by permitting the victim to subjectively determine the types of contact that were illegal. *Id.* at 882. In upholding the statute, the Michigan Court of Appeals summarized the statute as follows:

... the stalking statutes address a willful pattern of conduct, including, but not limited to, following or confronting the victim or calling the victim (i.e. conduct combined with speech), that would cause a reasonable person to feel terrorized, threatened, or harassed, and would cause a reasonable person in the victim's position to suffer emotional distress. Sections 411h(1)(a)-(d) and 411i(1)(a), (c)-(d). The contact must be initiated or continued without the victim's consent or in disregard of the victim's desire to discontinue the contact. Sections 411h(1)(e) and 411i(1)(f). Both § 411h(1)(c) and § 411i(1)(d) state that '[h]arassment does not include constitutionally protected activity or conduct that serves a legitimate purpose,' and such protected activity or conduct has been defined as labor picketing or other organized protests. *See Pallas v. Florida,* 636 So.2d 1358, 1360 (Fla.App., 1994) (upholding a similar stalking statute against vagueness challenges). Finally, for aggravated stalking under § 411i(2), there must also be a credible threat to kill another or inflict physical injury against the victim, a family member, or household member, a prior stalking conviction, or actions constituting the offense that are in violation of a restraining order, injunction, or probation order. Indeed, the statute could not be applied to entirely innocent conduct, as defendant suggests. *See Pallas, supra* at 1363.

*Id.* at 883. In the Report, the Magistrate Judge explained the significance of the decision:

In [*White* ], the court limited the definition of harassment in two significant ways. First, regarding the nature of the contact proscribed by the statute, the court held that "the contact must be initiated or continued without the victim's consent or in disregard of the vic-

tim's desire to discontinue the contact." The Court also limited the phrases 'constitutionally protected activity' and 'legitimate purpose' to include only 'labor picketing or other organized protests.' Report at 13–14.

Staley objects to the Magistrate Judge's conclusions regarding the *White* court's interpretation of the statute on three grounds. First, Staley argues that any interpretation of the statute in *White* cannot fairly be applied to his vagueness challenge because he was convicted prior to the *White* decision. This argument is rejected. As detailed in the Magistrate Judge's Report, it is clear that Staley's conduct was so abhorrent and harassing that it clearly falls within the zone of conduct that a stalking statute could constitutionally make criminal and is the type of conduct made illegal by the statute as interpreted in *White*. As such, the interpretation of the statute in *White* is applicable to Staley's claims. *See Osborne v. Ohio,* 495 U.S. 103, 118, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (explaining that where a state supreme court narrows the meaning of a vague statute, a previous conviction under that statute should only be reversed if the defendant would not have been convicted under the statute as interpreted); *supra* Part B (discussing "as applied" versus "facial" challenges to allegedly vague statutes).

Staley's second argument is that the Magistrate Judge misconstrued the extent to which the *White* court interpreted the allegedly vague phrases in the statute. The Court agrees in part with this objection.

There is clear evidence in the *White* opinion that the Michigan Court of Appeals interpreted the meaning of part-three of the harassment definition. The *White* court explicitly referenced the phrases "constitutionally protected activity" and "conduct that serves a legitimate purpose" and explained that they have "been defined as labor picketing or other organized protests." 536 N.W.2d at 882,

212 Mich.App. 298. As a result, the Court shares the Magistrate Judge's conclusion that the *White* court narrowed the meaning of part-three to include only labor picketing or other organized protests.

In contrast, it is less clear whether the *White* court attempted to interpret part-two of the harassment definition. On the one hand, as the Magistrate Judge pointed out, the *White* court indicated that the statute required proof of unconsented contact. *See Id.* at 883 ("The contact must be initiated or continued without the victim's consent or in disregard of the victim's desire to discontinue the contact. Sections 411h(1)(e) and 411i(1)(f)."). This statement might be read to imply that the type of contacts described after the phrase "includes, but is not limited to" (namely repeated unconsented contacts) must be present in order to satisfy the definition of harassment.

On the other hand, the *White* decision never explicitly referenced the phrase "includes, but is not limited to." Furthermore, the sentence from the *White* opinion which implicates this phrase is followed immediately by a citation to the definition of "unconsented contact" (Sections 411h(1)(e) and 411i(1)(f)) not the definition of harassment. *Id.* This citation is telling because it indicates that the *White* court was not focused on the meaning of the phrase "includes, but is not limited to." Therefore, because the *White* court's treatment of the "includes, but is not limited to" phrase is unclear, the Court cannot conclude that the *White* court gave this phrase any particular meaning.

Therefore, while the Court agrees with the Magistrate Judge that the *White* decision narrows the meaning of part-three of the harassment definition, the Court cannot reach the same conclusion with respect to part-two.

Staley's final argument is that the Michigan Supreme Court would analyze the statute differently than the Michigan Court of Appeals in *White*. This argu-

ment is unpersuasive for two reasons. First, the fact that *White* has not been overruled or criticized by the Michigan Supreme Court since it was decided in 1995 indicates that it remains good law in the state of Michigan. Second, to the extent that Staley offers cases which indicate that the Michigan Supreme Court might reach a contrary result, these cases are not relevant because they involved legal issues and statutes absent from the instant case. As a result, the Court has no reason to believe that the Michigan Supreme Court would interpret the statute differently than the Michigan Court of Appeals in *White*.

### E. Analysis

The Court now turns to the merits of Staley's assertion that part-two and part-three of the harassment definition are so unclear that the statute violates the First and Fourteenth Amendments.

### 1. "Includes, but is not Limited to"

The Court does not believe that the phrase "includes, but is not limited to," found in part-two of the harassment definition, renders the statute unconstitutionally vague. There are two possible interpretations of this portion of the definition.

On the one hand, part-two could be read to mean that harassing conduct includes either: (a) repeated unconsented contacts that would cause a reasonable person to suffer emotional distress, *or* (b) some other type of unspecified contact. This reading interprets the words following the phrase "includes, but is not limited to" as providing examples of the types of contact that may constitute harassing conduct, while explicitly recognizing that there are other unspecified types of contact which might also constitute harassment. This reading places greater significance on the "but is not limited to" modifying clause than it does on the word "includes." If this were

the only possible interpretation of part-two of the harassment definition, Staley would be correct that the harassment definition is unclear as to what types of contact constitute harassing conduct.

On the other hand, this portion of the definition can also be read to mean that harassing conduct *requires* repeated unconsented contacts that cause emotional distress and that it *may also* include other types of contact. This reading focuses on the word "includes" and interprets the "but is not limited to" clause to mean simply that, assuming the existence of repeated unconsented contacts, other types of contact may be present as well.[3]

This second reading of the harassment definition has the advantage of providing meaning to part-two of the definition, and avoids the vagueness concerns that attach to the first interpretation. Under the well-settled rules of statutory construction, "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the [courts should] construe the statute to avoid such problems unless such construction is plainly contrary to the intent of [the legislature]." *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California,* 508 U.S. 602, 628–29, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993) (quoting *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988)); *see also Lynch v. Overholser,* 369 U.S. 705, 711, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962) ("[a] statute should be interpreted, if fairly possible, in such a way as to free it from not insubstantial constitutional doubts"); *Hadix v. Johnson,* 144 F.3d 925, 937 (6th Cir.1998) *rev'd in part on other grounds.* In order to give meaning to part-two of the harassment definition, the Court interprets the definition to require

---

**3.** Although the Court concluded that *White* had not clearly interpreted part-two of the harassment definition, the statement in *White*

that the statute requires proof of unconsented contact may be read to support this interpretation.

that harassing conduct include repeated unconsented contact that causes emotional distress and that other types of contact may be present as well.

■ Interpreted in this manner, the phrase "includes, but is not limited to" does not render the harassment definition, or the statute, unconstitutional in light of the First or Fourteenth Amendments. In order to be convicted of Aggravated Stalking, an individual must engage in harassment. Mich. Comp. Laws § 750.411i(e). As interpreted by the Court, in order to engage in harassment, an individual must engage in repeated unconsented contact towards another that would cause a reasonable person to suffer emotional distress. This interpretation gives clear meaning to the statute, provides notice to the public as to what is illegal, gives law enforcement adequate guidance, and does not infringe upon or threaten any constitutionally protected conduct. As such, at least on this basis, the statute does not violate the First Amendment or the Due Process Clause of the Fourteenth Amendment. Staley's objections in this regard are overruled.

### 2. "Constitutionally Protected Activity" and "Conduct that Serves a Legitimate Purpose"

Part-three of the harassment definition attempts to carve-out and exclude certain types of conduct from the harassment definition. In particular, the definition provides that "[h]arassment does not include constitutionally protected activity or conduct that serves a legitimate purpose." Mich. Comp. Laws § 750.411i(d). Staley argues that the phrases "constitutionally protected activity" and "conduct that serves a legitimate purpose" are vague.

■ The Court has already concluded that the *White* court interpreted these phrases to include only labor picketing or other organized protests and that this interpretation is binding on the Court. As a result, whatever else may be said about these phrases, their meaning is clear and definite. These phrases mean exactly what the *White* court said they mean— "labor picketing and other organized protests." 536 N.W.2d at 882. Therefore, Staley's argument that these phrases are so unclear that they fail to satisfy the notice requirements of the Due Process Clause is misplaced. Staley's due process attack on this portion of the statute is rejected.[4]

■ The remaining question is whether these phrases, as interpreted by the *White* court, render the statute unconstitutionally overbroad in violation of the First Amendment. An overbreadth challenge will be successful if the challenged statute trenches upon a substantial amount of First Amendment protected conduct in relation to the statute's plainly legitimate sweep. *Broadrick,* 413 U.S. at 612–15, 93 S.Ct. 2908. While there is a concern that a statute too broadly worded "may deter protected speech to some unknown extent,

---

4. If the *White* interpretation of the statute were not binding on the Court, it would agree that these portions of the statute violate the Due Process Clause. In particular, the statute excludes "conduct that serves a legitimate purpose" from the definition of harassment. Unfortunately, the statute provides absolutely no guidance as to what constitutes a "legitimate purpose." Therefore, the public and the police are left solely to their own speculative powers to determine the meaning of this clause. As such, without the *White* interpretation, the Court would agree with Staley that the statute fails to meet the basic requirements of the Due Process Clause. *See Kolender,* 461 U.S. at 361, 103 S.Ct. 1855 (finding that requirement to provide "credible and reliable" information was vague and encouraged arbitrary enforcement); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) (striking down statutory provision which prohibited "strolling around from place to place without any lawful purpose" on the grounds that the "serves no legitimate purpose" standard encouraged arbitrary enforcement and violated the Due Process Clause); Katherin Boychuk, *Are Stalking Laws Unconstitutionally Vague or Overbroad?,* 88 Nw. U.L.Rev. 769, 789–791 (1994) (arguing that courts are likely to determine that the "serves no legitimate purpose" standard is vague).

there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe." *Id.* Finally, when a challenged statute implicates conduct and not merely speech, the statute's overbreadth "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.*

▇ Although this statute criminalizes conduct and not speech, it infringes upon a substantial amount of conduct which lies at the core of the First Amendment. If only labor picketing and other organized protests are explicitly excluded from the definition of harassment, the statute is at odds with the First Amendment.

The most obvious First Amendment rights which are implicated by the *White* court's narrow construction of the phrases "constitutionally protected activity" and "conduct that serves a legitimate purpose" are the rights of the press to investigate issues of public importance. *See generally Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986) (recognizing importance of the First Amendment right of the press to report on matters of public concern); *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (same). *See also Branzburg v. Hayes,* 408 U.S. 665, 681, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (explaining that news-gathering is entitled to First Amendment protection because "without some protection for seeking out the news, freedom of the press could be eviscerated.").

One example of the way in which the media's rights are abridged, in an area very familiar to the courts, is news reporting concerning high-profile jury verdicts. Imagine that an investigative reporter has spent several months reporting on a high profile criminal case. Following the jury's verdict, the reporter desires to interview jurors in order to determine what evidence influenced their verdict. In the course of this investigation, the reporter repeatedly asks a particular juror questions about the jury's deliberations or even follows that juror to or from work in order to illicit the information. If the reporter's conduct causes the juror to experience emotional distress, and the juror experiences a reasonable feeling of harassment or fear, the reporter could be subject to criminal prosecution under the statute. In the Court's judgment, this potential prosecution trenches upon protected First Amendment conduct. *See Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 575–76, 580–81, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (noting that First Amendment provides the public and the press with a right of access to criminal trials); *Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 505, 509–10, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (noting that First Amendment guarantees the right of the press to attend voir dire examination of potential jurors); *In Globe Newspaper Co. v. Superior Court for County of Norfolk,* 457 U.S. 596, 606–07, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (explaining that any restriction on news-gathering rights of the press must be necessitated "by a compelling governmental interest, and ... narrowly tailored to serve that interest."); *In re Express–News Corp.,* 695 F.2d 807, 808–11 (5th Cir.1982) (holding local rule barring post-trial interviews of jurors without leave of court violated "first amendment right to gather news"); *United States v. Sherman,* 581 F.2d 1358, 1361 (9th Cir.1978) (district court's order barring post-trial contacts with jurors improperly impinged on news-gathering activity protected by the First Amendment).[5]

Not only are the rights of the press implicated by the *White* court's limited interpretation of these phrases, commer-

**5.** It is not difficult to imagine countless other situations in which the statute might penalize the press for investigating matters of public importance.

cial speech is placed in jeopardy as well. *See generally Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) (recognizing that the First Amendment affords protection to commercial speakers and that government may only infringe on those rights in limited circumstances). A telemarketer or door-to-door salesman who repeatedly solicits a given individual could be subject to prosecution under the statute for doing nothing more than trying to make a living.

Finally, the rights of ordinary citizens to redress political or legal grievances is implicated by the statute. *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983) ("[t]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances"); *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (observing that access to the court is an important defense against constitutional violations). If aggressively and repeatedly calling a congressman or filing numerous legal documents with a court clerk does not serve an ill-defined "legitimate purpose," an ordinary citizen might be guilty of stalking because a public employee could experience reasonable feelings of distress or harassment.

These examples illustrate that the *White* court's interpretation of the phrases "constitutionally protected activity" and "conduct that serves a legitimate purpose" is so limited that it allows application of the statute to core First Amendment conduct. This is not to say that the statute necessarily makes protected conduct illegal or that individuals engaging in this conduct are certain to be prosecuted or convicted. Instead, the vagueness of the statute chills the exercise of First Amendment freedoms because it potentially subjects those who exercise these rights to criminal prosecution. *See Broadrick*, 413 U.S. at 612–13, 93 S.Ct. 2908 ("[the overbreadth doctrine relies upon the] assumption that the stat-

ute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression"). The state of Michigan may certainly criminalize stalking, but it may not do so at the expense of the First Amendment. *See id.* ("[the overbreadth doctrine is predicated on the idea that] the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects of overly broad statutes").

As such, the Court sustains Staley's objection to the Magistrate Judge's Report. Furthermore, the Court concludes that the statute violates the First Amendment because it is overbroad. Finally, the Court determines that the state court's decisions to the contrary in *People v. Staley*, No. 17855, slip op. (Mich.Ct.App., August 20, 1996) and *People v. Staley*, 454 Mich. 919, 454 Mich. 919 (1997) were unreasonable applications of clearly established federal law.

## Conclusion

For the reasons provided, the Court adopts in part, and rejects in part, the Magistrate Judge's Report. Similarly, Staley's objections are sustained in part and overruled in part. Furthermore, because the Court concludes that the statute is unconstitutionally overbroad, in that it potentially criminalizes a substantial amount of conduct protected by the First Amendment, Staley's Petition for a Writ of Habeas Corpus is granted because he was convicted under an unconstitutional statute.