Rel: May 2, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2024-2025

_____

## CR-2023-0837

_____

### Herman Clifford Hall

### v.

### State of Alabama

### Appeal from Jefferson Circuit Court
### (CC-22-3781)

COLE, Judge.

Herman Clifford Hall appeals his conviction for first-degree assault, a violation of § 13A-6-20(a)(1), Ala. Code 1975, as well as his resulting sentence. For the following reasons, we reverse Hall's conviction for first-degree assault and remand this case to the Jefferson

Circuit Court with instructions that it enter a judgment of guilty to the lesser-included offense of second-degree assault and impose a sentence for that offense.

Facts and Procedural History

On November 17, 2022, the Grand Jury of Jefferson County issued a one-count indictment against Hall, charging him with attempted murder, a violation of §§ 13A-4-2 and 13A-6-2, Ala. Code 1975. (C. 51.) Hall pleaded not guilty to the charge.

Hall's trial commenced on September 19, 2023. The evidence at trial revealed that, on November 3, 2020, the victim in this case, Lorenzo Cornell Hines, went to Legion Field in Birmingham to volunteer as a poll worker during the 2020 presidential election. Around 10:00 a.m. that morning, Hines decided to take a break and went outside. There, he saw a few brothers of the Omega Psi Phi fraternity ("the fraternity"), who were distributing bottles of water to voters. Hines, who had been a member of the fraternity since 1989 and a lifetime member since 2002, greeted the brothers and occasionally returned to talk to them throughout the day. (R. 167, 175-76.)

Around 4:45 p.m. that afternoon, Hines approached the fraternity members again and saw John Sanders, whom Hall had not yet met, standing with them. While Hines and Sanders were talking, a man, who was later identified as Hall, approached them. According to Hines, Hall was "very agitated, talking fast, and rambling." (R. 183.) Hines testified that Hall immediately started questioning Hines about his membership in the fraternity, stating: "[Y]ou're around here hanging out with the frat brothers like you know … us, but I don't know you. Who are you? … [W]hy are you hanging out with the brothers like you know us or something?" (R. 184.) Hines responded that he did know some of the fraternity brothers, and Hall replied: "[W]ell, I've never seen you at the frat house, why aren't you -- why I've never seen you at the frat house." (R. 184.) Afterward, Hines explained to Hall that he was a lifetime member; however, Hall told him that he did not consider Hines a "Bruh" or a "Que," which Hines clarified meant that Hall did not consider him a true brother of the fraternity. Hines testified that Hall then said: "[Y]ou're just another motherfucker in the street and I take motherfuckers like you out." (R. 193.)

3

As Hall became more agitated, Hines decided to leave and told Hall that he was going back to the polls. To return, however, Hines had to walk past Hall, who blocked Hines's path. Hall then yelled: "I have a knife." (R. 194.) Hall pulled a knife out of his pocket, and Sanders, who had been trying to convince Hall to calm down, tried to step in between Hines and Hall. Hall, however, stabbed Hines in the leg. Hines testified that, after he was stabbed in the leg, he was able to punch Hall in the face before Hall stabbed Hines again in the stomach. After Hall stabbed Hines in the stomach, he immediately ran away. Hines testified that he never acted aggressively or touched Hall until Hall stabbed him in the leg.

At first, Hines did not know that he had been stabbed even though he was bleeding. Shortly thereafter, paramedics were called, and Hines was taken to UAB Hospital. Hines did not require surgery. According to medical records and photographs of his injury, Hines had a small puncture wound in his thigh, which was cleaned but did not require stitches. The wound to his abdomen was approximately 7 centimeters long; however, it did not enter his "abdominal wall fascia" or his "peritoneal cavity." (C. 228.) Hospital staff "irrigated" the wound and

4

closed it with stitches. The hospital records showed that Hines was discharged several hours after the incident and cleared to return to work two days later. Hines did not testify about any lasting effects from his wounds.

After the State rested, the defense moved for a judgment of acquittal. (R. 394.) The trial court denied the motion.

Hall then testified in his own defense. Hall testified that, on the day of the incident, he went to the polls early in the morning to vote. Later in the day, Hall returned after learning that several of his fraternity brothers would be at the polling location. Hall testified that, while there, he heard Sanders "sweating" Hines about his involvement in the fraternity and accusing Hines of lying about when he joined the fraternity. Hall stated that he went over to defend Hines's status against Sanders's accusations, telling Sanders that "[Hines] is a bruh. He's a brother." (R. 429.) Hall testified that he had previously heard of Hines through other members in the fraternity and searched for his membership in the fraternity's online records to discover that Hines became a member in 2002. Hall testified that, when he stated that Hines had been a member only since 2002, Hines became agitated and tried to

5

prove that he had been a member since 1989 by showing Hall his membership card. Hall, however, told Hines: "[M]an, put that up, I ain't looking at that, I know what I saw on that computer screen." (R. 432-33.) Hall then told Hines: "[Y]ou may legally be an Omega, [but] you ain't no Que." (R. 434.) Hall clarified that he intended this statement to be derogatory, meaning Hines was not a member in good standing with the fraternity.

According to Hall, Hines then allegedly punched Hall in the face hard enough to knock his glasses off his head and break them, so Hall took out a knife to defend himself. Hall testified that he then merely "touched" Hines's thigh with his knife. Hall said that Hines then punched him again in the face, and Hall "swung at him," allegedly without knowing whether he made contact. (R. 442.) Hall further stated that he left because he was scared that Hines would try to kill him.

After Hall's testimony, the defense again moved for a judgment of acquittal, which the trial court denied. The trial court held a charging conference, and the State requested multiple instructions, which, in pertinent part, included the following instruction: "'An assault with the hand or fist, under ordinary circumstances, neither justifies nor excuses

the use of a deadly weapon.' Scales v. State, 11 So. 121, 125 (Ala. 1892)."

(C. 143.) The trial court granted the State's request to give this particular instruction. The trial court then instructed the jury on attempted murder and the two lesser-included offenses of first-degree assault and second-degree assault, and it also gave the State's requested instruction. (R. 584-90.) The jury found Hall guilty of the lesser-included offense of first-degree assault.

The trial court sentenced Hall to 15 years' imprisonment and split the sentence for Hall to serve 3 years' imprisonment. The trial court ordered Hall to serve 6 months' in the Jefferson County Jail and the remaining 30 months' in Jefferson County Community Corrections. The remainder of Hall's sentence was suspended for him to serve 3 years' supervised probation. (C. 31.)

Hall filed a motion for a new trial, arguing that the State had failed to present sufficient evidence for a jury to convict him of first-degree assault and that the trial court had erred when it admitted the State's evidence of Hall's prior bad acts. (C. 195-203.) After a hearing, the trial court denied Hall's motion for a new trial. This appeal follows.

## Analysis[1]

Hall raises three arguments on appeal: 1) that the trial court erred by allowing a State's witness to testify, in violation of Rule 404(b), Ala. R. Evid., about a prior altercation he had with Hall; 2) that the trial court erroneously instructed the jury regarding self-defense; and 3) that the evidence was insufficient to support his conviction for first-degree assault.

### I.

Hall claims that the trial court erred when it allowed the State to elicit testimony under Rule 404(b), Ala. R. Evid., about a prior altercation Hall had with another fraternity member. The State contends that Hall's claims are not preserved for appellate review. We agree with the State.

The record shows that the State filed notice of its intent to introduce collateral-acts evidence at trial, under Rule 404(b), to prove Hall's motive. Specifically, the State wanted to introduce evidence of a prior incident when Hall questioned another member of the fraternity, Austin Coar, about his membership in the fraternity and pulled out a weapon to

---

[1]We address Hall's claims in an order that is different than the order in which they are presented in his brief on appeal.

threaten Coar when Hall found Coar's responses unsatisfactory. Although there is no motion in the record seeking a determination on the admissibility of the State's evidence, the trial court held a hearing on the State's notice of intent and heard arguments from the parties. At the conclusion of the hearing, the trial court stated: "[A]t this time, the State's 404(b) … motion is granted subject to any additional challenges from the defense." (R. 156 (emphasis added).) Hall's trial counsel did not make a continuing objection, nor did he seek clarification whether the trial court's ruling was unconditional or absolute. After the hearing, the trial court entered a written order stating, "NOTICE OF INTENT TO USE 404(B) EVIDENCE filed by STATE OF ALABAMA is hereby NOTED." (C. 22 (emphasis added).) The trial court's order further stated that the trial court would allow the State to introduce the evidence only to prove motive and that it would issue a limiting instruction after the testimony and in a final instruction during the jury charge.

At trial, Coar testified that he is also a member of the fraternity and that, when he was a student at Lawson State Community College, he had driven his truck, which displayed an Omega Psi Phi license plate border and bumper decal, to a baseball game. While he was parking, an

9

older man, who was later determined to be Hall, approached Coar's truck and aggressively interrogated Coar about his membership in the fraternity. Coar told Hall that he was a brother in the fraternity but added that he did not want to talk to Hall. Hall then pulled a firearm out of his waistband. Coar testified that he was frightened, got back into his truck, and left. Hall did not object to Coar's testimony at trial.

After Coar finished testifying, the trial court issued to the jury the following jury instruction:

> "[L]adies and gentlemen, you have just heard testimony from Austin Coar, and this testimony was in regard to an alleged prior bad act by the defendant, Herman Hall. You may not consider this testimony as evidence that the defendant had a bad character or that he acted in conformity with that character on the occasion that is the basis of the present charge, which is attempted murder, nor may you consider this evidence or testimony as proof that the defendant committed the act alleged in this case.
>
> "You may only consider the evidence of prior acts as evidence of motive to commit the act complained of in the indictment that I previously read to you.
>
> "I will give you a more detailed instruction at the close of this trial concerning the credibility of witnesses and how to better use the testimony that you just heard, but I wanted to give you this limited instruction now so that you understood the purpose of that testimony."

(R. 332-33.) After the trial, the trial court issued a similar instruction:

"You've heard testimony from Austin Coar. This testimony was in regard to an alleged prior bad act by the defendant, Herman Hall. You may not consider this testimony as evidence that the defendant had a bad character or that he acted in conformity with that character on the occasion that is the basis of the present charge, which is attempted murder, nor may you consider this evidence or testimony as proof that the defendant committed the acts alleged in this case.

"You may only consider the evidence as evidence of motive to commit the act complained of in the indictment that I read to you at the beginning of the trial and that I read to you a moment ago. Motive is defined as an inducement or that which leads or tempts the mind to do or commit the crime charged. Motive has also been described as that state of mind which works to supply the reason that nudges the will and prods the mind to indulge in criminal intent."

(R. 578-79.)

A trial judge's decision to grant or deny a motion in limine is within his or her sound discretion. See Primm v. State, 473 So. 2d 1149, 1158 (Ala. Crim. App. 1985); Hulsey v. State, 866 So. 2d 1180, 1188 (Ala. Crim. App. 2003) (citation omitted). When a party seeking to exclude evidence receives an adverse ruling on the opposing party's motion in limine, the adverse ruling alone preserves nothing for review. See Morton v. State, 651 So. 2d 42, 45 (Ala. Crim. App. 1994).

The trial court ruled that the evidence the State sought to present to the jury, as outlined in its "Notice of Intent to Use 404(b) Evidence,"

was admissible to prove Hall's motive. This ruling was against Hall's position that the evidence should be excluded. The ruling, in both substance and effect, is the same adverse ruling that Hall would have received had he filed his own motion in limine to exclude the State's evidence at trial. Accordingly, our caselaw pertaining to preservation and the denial of a motion in limine to exclude evidence is applicable here.

> "The general rule is that the denial of a motion in limine, without more, does not rise to the level of reversible error. Where the party seeking the exclusion of the evidence suffers an adverse ruling on its motion in limine, that party
>
>> "'can preserve the ruling for post-judgment and appellate review <u>only</u> by objecting to the introduction of the proffered evidence and assigning specific grounds at the time of trial, unless he or she obtains the express acquiescence of the trial judge that a subsequent objection and assignment of grounds are not necessary.'
>
> "<u>Parks v. State</u>, 587 So. 2d 1012, 1015 (Ala. 1991) (emphasis in original). <u>See also</u> <u>Ex parte Phillips</u>, 527 So. 2d 154, 156 (Ala. 1988). Similarly, where the party seeking to introduce the evidence suffers an adverse ruling on the opposing party's motion in limine, the adverse ruling alone, 'unless … [it] is absolute or unconditional, … does not preserve the issue for appeal.' <u>Perry v. Brakefield</u>, 534 So. 2d 602, 606 (Ala. 1988)."

<u>Morton v. State</u>, 651 So. 2d 42, 45 (Ala. Crim. App. 1994).

Because the trial court indicated that its ruling was not final and expressly stated that its ruling was "subject to any additional challenges" (R. 156), it is clear that the trial court's ruling was not an absolute ruling on the admissibility of the evidence. Accordingly, because the trial court's ruling was not "absolute or unconditional," Perry, 534 So. 2d at 606, and because Hall never requested or obtained "'express acquiescence of the trial judge that such subsequent objection to evidence proffered at trial and assignment of grounds therefor are not necessary,'" Bacot v. State, 597 So. 2d 754, 757 (Ala. Crim. App. 1992) (quoting Ex parte Phillips, 527 So. 2d 154, 156 (Ala. 1988)), Hall was required to object to the contested evidence when that evidence was introduced at trial. Although he did raise this issue in his motion for a new trial, his post-trial motion was too late to preserve this issue for appellate review. See Greenhill v. State, 746 So. 2d 1064, 1068-69 (Ala. Crim. App. 1999) ("A motion for a new trial or a motion for a judgment of acquittal is not sufficient to preserve the issue where no timely objection was made at the time the evidence was offered and admitted."). Because Hall failed to object when the disputed testimony was elicited from the witness, "[Hall] has failed to preserve this issue for our consideration." Bacot, 597 So. 2d at 757.

13

II.

Hall next argues that the trial court's decision to give the State's requested jury instruction -- that "[a]n assault with the hands or fists under ordinary circumstances neither justifies nor excuses the use of a deadly weapon" -- "misstates the law on self-defense and conflicts with the court's other proper self-defense instructions." (Hall's brief, p. 36 (emphasis added).) Specifically, Hall contends that the case from which the instruction originated, Scales v. State, 96 Ala. 69, 11 So. 121 (1892), no longer applies to self-defense under § 13A-3-23, Ala. Code 1975, because, he says, it does not contemplate using a deadly weapon in defense of a first- or second-degree assault. The State contends that this argument is without merit and that it was not preserved for appeal.

Regarding the issue of preservation, Hall's counsel objected to this instruction when proposed at the charging conference. However, after a discussion, counsel for the State asserted, "[t]hat has always been the law … for well over a hundred years." (R. 497.) Hall's counsel then responded that he would "have to live with it," apparently meaning the law regarding self-defense (R. 497.) Although this could be viewed as a sarcastic comment, Hall's counsel also acknowledged that the instruction

14

recognized the distinction in Alabama's self-defense law between the force allowed under "normal circumstances" as opposed to "abnormal circumstances." (R. 497.) Thus, we question whether Hall's argument is preserved for review. However, regardless, Hall is due no relief on his claim. The trial court's instruction was limited to "ordinary circumstances" and was not an inaccurate statement of the law, particularly when considered in the context of the trial court's entire instructions, which correctly set forth the circumstances that allow for the use of deadly force.

It is well settled that "'"[a] trial court has broad discretion in formulating its jury instructions, providing they are an accurate reflection of the law and facts of the case."'" Harris v. State, 794 So. 2d 1214, 1219-20 (Ala. Crim. App. 2000) (quoting Hemphill v. State, 669 So. 2d 1020, 1021 (Ala. Crim. App. 1995)). Additionally, "[w]hen reviewing a trial court's jury instructions, we must view them as a whole, not in bits and pieces, and as a reasonable juror would have interpreted them." Johnson v. State, 820 So. 2d 842, 874 (Ala. Crim. App. 2000) (citing Ingram v. State, 779 So. 2d 1225 (Ala. Crim. App. 1999)).

A review of the entirety of the jury instructions in this case reveals that the trial court clearly explained that a defendant may use deadly physical force in self-defense when confronted with an attack constituting a first- or second-degree assault. For instance, the trial court stated:

> "A defendant may use deadly physical force in self-defense if the defendant reasonably believes that the other person is, one, using or about to use unlawful deadly physical force against them or, two, is committing or about to commit <u>an assault in the first degree or an assault in the second degree</u> against the defendant.
>
> "Deadly physical force is force that under the circumstances in which it is used is readily capable of causing death or serious physical injury."

(R. 591 (emphasis added).) The trial court instructed the jury that, in relation to the issue of self-defense, "a person commits the crime of assault in the second degree if, with the intent to cause serious physical injury to another person, he causes serious physical injury to another person." (R. 593.) The trial court reiterated that self-defense merely required evidence that "[t]he person, in this case the victim, caused or was about to cause serious physical injury to the defendant, and the victim intended to cause serious physical injury to the defendant." (R. 593.) The trial court did not limit the applicable risk of serious physical injury to the use of a deadly weapon. Additionally, the trial court

16

provided circumstances from which the jury could find that Hall would have been justified in the use of deadly physical force, such as if he had a reasonable belief that he was in imminent danger of death or serious physical injury that was beyond a mere fear of personal violence:

> "Imminent danger means that the defendant -- at the time he did the act, the circumstances and conditions perceived by the defendant were such that they would have reasonably impressed a reasonable person that the defendant was in danger of immediately being killed or seriously harmed in body by the other person, and that the defendant honestly believed himself to be in such danger though in truth the defendant was not in such danger.
>
> "A fear, though well grounded, of personal violence about to be committed is no justification [for the use of deadly physical force] unless the danger appears to be imminent or threatening. The fact that the defendant felt threatened is not sufficient to invoke the right of self-defense. A threat in and of itself, even if there exists the present apparent ability to carry out the threat, is not sufficient to support a claim of self-defense."

(R. 595.)

The trial court also made it clear to counsel that "[i]f the defense wants to argue that a hand or fist could cause serious physical injury," Hall could make that argument to the jury. (R. 496.) Furthermore, this argument was supported by the testimony of at least one witness for the

17

prosecution who testified that "serious physical injury" could result from a "punch," "[d]epend[ing] on the extent of the injury." (R. 383.)

In sum, when considered in their entirety, the trial court's instructions properly informed the jury regarding the law of self-defense and did not instruct the jury that "self-defense involving a deadly weapon is not justified in response to 'an assault with the hands or fists.'" (Hall's brief, p. 38.) Rather, the court expressly instructed the jury on the circumstances under which deadly force was allowed, including the reasonable belief that the other person was about to commit either a first- or second-degree assault. "'The jury is presumed to follow the instructions given by the trial court.'" Mitchell v. State, 84 So. 3d 968, 983 (Ala. Crim. App. 2010) (quoting Frazier v. State, 758 So. 2d 577, 604 (Ala. Crim. App. 1999)). Accordingly, Hall is due no relief on this issue.

## III.

Finally, Hall argues that the trial court erred when it denied his post-trial motion for a judgment of acquittal. Specifically, Hall argues that the State failed to present sufficient evidence of a serious physical injury to prove first-degree assault. We agree with Hall that the State

18

failed to present sufficient evidence that Hines's injuries constituted a serious physical injury.

The standard that this Court has adopted in addressing a sufficiency-of-the-evidence claim is clear:

> "'"'In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" Ballenger v. State, 720 So. 2d 1033, 1034 (Ala. Crim. App. 1998) (quoting Faircloth v. State, 471 So. 2d 485, 488 (Ala. Crim. App. 1984), aff'd, 471 So. 2d 493 (Ala. 1985)). "'The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" Nunn v. State, 697 So. 2d 497, 498 (Ala. Crim. App. 1997) (quoting O'Neal v. State, 602 So. 2d 462, 464 (Ala. Crim. App. 1992)). "'When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'" Farrior v. State, 728 So. 2d 691, 696 (Ala. Crim. App. 1998) (quoting Ward v. State, 557 So. 2d 848, 850 (Ala. Crim. App. 1990)). "The role of appellate courts is not to say what the facts are. Our role … is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury." Ex parte Bankston, 358 So. 2d 1040, 1042 (Ala. 1978).'

19

"McGlocklin v. State, 910 So. 2d 154, 156 (Ala. Crim. App. 2005)."

Dailey v. State, 316 So. 3d 253, 256-57 (Ala. Crim. App. 2020).

"A person commits the crime of assault in the first degree if[,] … [w]ith intent to cause serious physical injury to another person, he or she causes serious physical injury to any person by means of a deadly weapon or a dangerous instrument." § 13A-6-20(a)(1), Ala. Code 1975. "Serious physical injury" is defined, in relevant part, as a "[p]hysical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ." § 13A-1-2(14), Ala. Code 1975.

On appeal, Hines contends, and the State does not contest, that there was no evidence of protracted disfigurement, impairment of health, or impairment of the function of a bodily organ. We agree that the State presented no evidence that Hines suffered prolonged effects from his injuries. There is no evidence indicating that, after the incident or at least until the time of trial, Hines suffered from any "protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ." § 13A-1-2(14). Although

20

the State introduced photographic evidence of Hines's treated wounds and hospital records detailing his injuries at the time -- or within a few days -- that the injuries occurred, the State presented no evidence concerning how Hines's wounds affected him after the incident. The State asserts on appeal that it did sufficiently establish that Hines's injuries created a "substantial risk of death." We hold, however, that even when viewing the evidence in the light most favorable to the State, the State did not present sufficient evidence to prove that Hines's injuries created such a risk of death.

This case is substantially similar to <u>Saylor v. State</u>, 719 So. 2d 266 (Ala. Crim. App. 1998). In <u>Saylor</u>, the defendant was indicted for attempted murder for cutting the victim twice in the neck with a knife, and the trial court issued instructions on the lesser-included offenses of first- and second-degree assault. <u>Id.</u> at 266. The evidence at trial indicated that the victim had bled from her wounds, which were skin-deep, but there was "no evidence of internal bleeding or of any damage to veins, arteries, or organs." <u>Id.</u> at 268. Her wounds were treated, and she was discharged the next day. <u>Id.</u> No medical expert testified about the severity of the victim's injuries. <u>Id.</u> Even so, the jury found Saylor guilty

21

of first-degree assault. This Court determined that there was no factual support for finding that the victim suffered from a serious physical injury, and we reversed Saylor's conviction.

Here, the jury heard testimony that Hines was stabbed twice -- once in the stomach and once in the thigh -- and was shown photographic evidence of Hines's wounds, as well as crime-scene photographs of the blood Hines lost at the scene. The jury was also provided documentation of Hines's hospital records and testimony from Hines about his treatment at the hospital. Hines testified that hospital staff initially believed that his injuries were severe enough to require surgery; however, after conducting testing, they determined that Hines's wounds "didn't go quite as deep, so they didn't need to do surgery." (R. 208.) Hines's hospital records reveal that Hines suffered a "7cm stab wound in the right abdomen" and that the wound reached Hines's stomach muscles but did not enter his "anterior abdominal wall fascia" or his "peritoneal cavity." (C. 228.) This wound was cleaned and closed with stitches. The injury to Hines's leg was a small puncture wound that did not even require stitches. The hospital records also show that Hines was discharged several hours after the incident, and he was cleared to return to work two

days later. Additionally, although a medical practitioner's testimony is not required to establish serious physical injury, Hopson v. State, 292 So. 3d 407, 412 (Ala. Crim. App. 2019), there was no testimony from medical professionals who could clarify whether the amount of blood Hines lost at the scene would have placed him in a life-threatening position. Cf. Rothchild v. State, 558 So. 2d 981, 987 (Ala. Crim. App. 1989) (treating physicians testified to the seriousness of the victim's injuries and stated that "there was a high probability that she would have died had she not received treatment"). Furthermore, although not a medical expert, Officer Henry Pilgrim, with the Birmingham Police Department, responded to the scene and testified "that the wounds were non-life-threatening." (R. 318.)

> "In light of the above, we must reverse [Hall]'s conviction for assault in the first degree because the State failed to prove that the injuries [Hines] suffered caused a substantial risk of death, or caused serious and protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ."

Saylor, 719 So. 2d at 269.

Although Hall's conviction for first-degree assault must be reversed, Hall is not entitled to a new trial. This is because

23

"if an appellate court holds the evidence insufficient to support a jury's guilty verdict on a greater offense, but finds the evidence sufficient to support a conviction on a lesser included offense, it may enter a judgment on that lesser included offense, provided that the jury was charged on the lesser included offense."

Ex parte Roberts, 662 So. 2d 229, 232 (Ala. 1995).

Here, the jury was instructed on the lesser-included offense of second-degree assault. Section 13A-6-21(a)(2), Ala. Code 1975, states that "[a] person commits the crime of assault in the second degree if the person[,] … [w]ith intent to cause physical injury to another person, … causes physical injury to any person by means of a deadly weapon or a dangerous instrument." A physical injury is "[i]mpairment of physical condition or substantial pain." § 13A-1-2(12), Ala. Code 1975. The State clearly presented sufficient evidence of each element of second-degree assault, including that Hines suffered physical injury from Hall's use of a deadly weapon or dangerous instrument.

Accordingly, we reverse Hall's conviction for first-degree assault, vacate the judgment of the trial court, and remand the case to the trial court with instructions that, in the presence of Hall and his counsel, it enter a judgment of guilty to the lesser-included offense of second-degree assault and impose a sentence for that offense. The trial court shall take

24

all necessary action to see that the circuit clerk makes due return to this Court at the earliest possible time and within 42 days of the date of this opinion. The return to remand shall include a transcript of the remand proceedings conducted by the trial court.

## Conclusion

For these reasons, we reverse Hall's conviction for first-degree assault, vacate the trial court's judgment, and remand this case with instructions.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Windom, P.J., and Minor and Anderson, JJ., concur. Kellum, J., concurs in the result.